# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00381-CV

**Robert S. Howell, D.C.; First Rio Valley Medical, P.A.; Keith Gilbert;
William Maxwell; and Gilbert & Maxwell, P.L.L.C., Appellants**

**v.**

**Texas Workers' Compensation Commission; Envoy Medical Systems, L.L.C.;
Texas Mutual Insurance Company; State Office of Risk Management; and
Continental Casualty Insurance Company, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. GN200967, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

---

## O P I N I O N

In this case, we must decide whether, when a health care provider provides medical treatment to a workers' compensation claimant and subsequently disputes the adequacy of payment by a workers' compensation insurance carrier, the health care provider must first exhaust administrative remedies within the workers' compensation system before seeking to resolve the dispute in a court. We must also determine whether, after one party files a declaratory judgment action in a Travis County district court, that court obtains jurisdiction to grant a counterclaimant's request for an anti-suit injunction prohibiting the original party from pursuing related suits in the courts of another Texas county.

Appellants Robert S. Howell, D.C. and First Rio Valley Medical, P.A. (collectively, "First Rio") appeal a judgment rendered in favor of appellees Texas Workers' Compensation Commission; Envoy Medical Systems, L.L.C.; Texas Mutual Insurance Company; State Office of Risk Management; and Continental Casualty Insurance Company. The district court rendered judgment that First Rio must first exhaust administrative remedies before seeking judicial review of a dispute with a carrier and that the independent review organization ("IRO") fees for medical necessity reviews are constitutional. Pursuant to the declaratory action, the district court awarded attorney's fees to the Commission, Texas Mutual, and Continental Casualty.[1] The district court further enjoined First Rio from prosecuting the approximately 723 billing dispute lawsuits that it had filed in Cameron County and from filing a new lawsuit until it has received a final, non-appealable decision in its favor through the administrative process and the carrier has refused to pay.

In nine issues, First Rio asserts that (i) the district court was without jurisdiction to enter the anti-suit injunction; (ii) the district court erred in finding that First Rio, when disputing adequacy of payment, must exhaust administrative remedies within the workers' compensation system before seeking review in a court; (iii) the district court abused its discretion in denying First Rio's demand for a jury trial; (iv) the district court erred in granting declaratory relief because the declaratory action was an improper vehicle for attorney's fees; (v) the district court erred in granting declaratory relief because it was an improper advisory opinion; (vi) the district court erred in finding that Dr. Howell is a proper party to appellees' counterclaims; (vii) some of the district court's rulings

---

[1] The district court also awarded attorney's fees to other entities who are not parties to this appeal.

violated the United States and Texas Constitutions; (viii) the district court erred in finding that First Rio and Dr. Howell are vexatious litigants; and (ix) the district court erred in finding that the IRO fee is constitutional. We do not find any error pertaining to these issues.

In a separate issue, appellants Keith Gilbert, William Maxwell, and Gilbert & Maxwell, P.L.L.C. (collectively, "the law firm"), counsel for First Rio, assert that the district court abused its discretion by twice imposing sanctions on them. The district court first imposed $13,000 in sanctions pursuant to Texas Mutual's motion for sanctions and second *sua sponte* imposed $3,200 in sanctions after counsel for First Rio did not appear at the hearing on the motion for judgment. As to Texas Mutual's motion for sanctions, because we affirm the grounds for the sanctions only in part, we remand the issue for recalculation of attorney's fees sanctions in accordance with this opinion. As to the $3,200 award, although the district court did not afford the law firm an opportunity for notice and hearing before imposing those sanctions, the law firm failed to preserve error by not affording the district court an opportunity to correct its mistake.

Because only the Commission and the State Office of Risk Management sought permanent injunctive relief, and pursuant to Continental Casualty's request, we reform the judgment to delete the reference to Continental Casualty as one of the parties seeking a permanent injunction. We affirm the judgment in all other respects.

**FACTUAL AND PROCEDURAL BACKGROUND**

*Changes to Commission's Administrative Review Process*

First Rio's causes of action arise from the 2002 changes in the Commission's administrative review of an insurance carrier's denial or reduction in payment of a medical bill. To

3

put the events giving rise to this case in context, we will begin with some background concerning the 2002 amendments.

When a health care provider seeks payment from an insurance carrier for treatment of a workers' compensation claimant, it must first submit the medical bill to the carrier. 28 Tex. Admin. Code § 134.801(a) (2004).[2] If the carrier denies or reduces the payment and the health care provider is dissatisfied with the carrier's action, the health care provider is entitled to a review of the medical service. Tex. Lab. Code Ann. § 413.031(a)(1) (West Supp. 2004). Before pursuing further action, the health care provider must first send a request for reconsideration to the carrier. 28 Tex. Admin. Code § 133.304(k), (m) (2004). If still dissatisfied with the carrier's action, the health care provider may request medical dispute resolution. *Id.* § 133.304(m). The Commission shall by rule establish "a program for . . . resolution of a dispute regarding health care treatments and services." Tex. Lab. Code Ann. § 413.013(1) (West 1996).

Until January 1, 2002, the Commission's medical review division handled all medical dispute resolution matters, falling into two categories: medical fee disputes and medical necessity disputes. *See* 25 Tex. Reg. 2128 (2000) (codified at 28 Tex. Admin. Code § 133.305) (adopted Mar. 10, 2000). After that date, pursuant to House Bill 2600 passed in the 2001 legislative session, IROs began to conduct medical necessity reviews of health care provided to workers' compensation

---

[2] Unless an amendment of a provision made after this suit arose affects our analysis, or unless citation to historical provisions is necessary, for convenience we will refer to the current statutory and administrative provisions.

4

claimants.[3]  The medical review division continued to handle medical fee disputes.  *See* 28 Tex. Admin. Code § 133.307 (2004).

IROs were created in 1997 to perform reviews of medical necessity in disputes between medical insurance carriers and persons insured by employer-provided health benefit plans.[4] The Texas Department of Insurance regulates IROs.  Tex. Ins. Code Ann. art. 21.58C (West Supp. 2004).  Concerning the role of an IRO in the workers' compensation system, a health care provider seeking review of a medical necessity dispute involving denial or reduction of payment for medical services must file its request with the carrier and the medical review division of the Commission. 28 Tex. Admin. Code § 133.308(d) (2004).  The review of the medical necessity of medical services already provided, which is the type of review at issue in this case, is called a "retrospective necessity dispute."  *Id.* § 133.305(a)(4) (2004).  The Commission forwards the request to an IRO.  *Id.* § 133.308(j).  The IRO then notifies the parties of the assignment and requests documentation.  *Id.* § 133.308(k).  The health care provider must submit the documents and at the same time submit the fee for the IRO review.  *Id.* § 133.308(k), (r).  The fee for review by a medical doctor is a "tier one" fee, $650, and the fee for review by other health care providers, including chiropractors, is a "tier

---

[3]  Act of May 25, 2001, 77th Leg., R.S., ch. 1456, § 6.04, 2001 Tex. Gen. Laws 5167, 5186 (codified at Tex. Lab. Code Ann. § 413.031(e) (West Supp. 2004)).

[4]  Act of May 8, 1997, 75th Leg., R.S., ch. 163, § 8, 1997 Tex. Gen. Laws 317, 322-24 (codified at Tex. Ins. Code Ann. art. 21.58C (West Supp. 2004)); *see also Envoy Med. Sys. v. State*, 108 S.W.3d 333, 335 (Tex. App.—Austin 2003, no pet.) (describing creation of IROs).

two" fee, $460. *Id.* § 12.403 (2004) (setting out fee structure); § 133.308(r)(6) (stating that "independent review by a doctor of chiropractic shall be paid the tier two fee").[5] If a health care provider prevails in a retrospective necessity dispute with a carrier, the carrier must reimburse the provider the IRO fee. *Id.* § 133.308(r)(2).

After review of either a medical fee or medical necessity dispute, the nonprevailing party may request a contested case hearing before the State Office of Administrative Hearings (SOAH). *Id.* § 133.307(p) (medical fee disputes), § 133.308(u) (medical necessity disputes). A party who has exhausted its administrative remedies and is aggrieved by a final SOAH decision concerning a medical fee or medical necessity dispute may seek judicial review of the decision in a Travis County district court as governed by chapter 2001 of the government code. *Id.* § 133.307(p)(4) (medical fee disputes), § 133.308(u)(7) (medical necessity disputes); *see* Tex. Gov't Code Ann. § 2001.176(b)(1) (West 2000) (requiring request for judicial review to be filed in Travis County unless otherwise provided by statute). We now turn to the events giving rise to First Rio's causes of action and the subsequent proceedings.

### *First Rio's Challenge to the IRO Fee Rules and Ensuing Counterclaims*

Robert Howell, D.C., a chiropractor, is the clinic director and owner of First Rio Valley Medical clinic in Brownsville. The parties have stipulated that workers' compensation

---

[5] The Commission may charge a fee for review of a medical fee dispute by the medical review division, but no fee is stated in the rules. 28 Tex. Admin. Code § 133.307(o) (2004); *see* Tex. Lab. Code Ann. § 413.020 (West 1996) (giving Commission general authority to charge fees for review of "health care treatment, fees, or charges").

6

claimants constitute seventy to eighty percent of First Rio's business. In March 2002, First Rio filed suit in Travis County against the Commission and Envoy, an IRO, challenging the constitutionality of the IRO fee rules, seeking declaratory relief concerning the validity of the rules, and seeking an injunction to permit First Rio to file medical necessity disputes without having to pay the IRO fee. In May and June 2002, shortly after this Court held that the Commission had improperly delegated audit powers of medical bills to private insurance carriers,[6] First Rio filed approximately 723 suits against workers' compensation insurance carriers in Cameron County justice of the peace courts, seeking payment of medical bills that the carriers had either partially paid or denied, in addition to $1050 in attorney's fees for each of the suits.

On June 20, 2002, the Commission filed its original answer and counterclaim, seeking a declaration that First Rio is required to pursue adequacy of payment disputes according to the Commission's statutes and rules, and temporary and permanent injunctive relief enjoining First Rio from pursuing and filing its "continued pursuit of multiplicitous and vexatious litigation" in the Cameron County courts. The next day, at the hearing on the Commission's request for a temporary restraining order ("TRO"), Texas Mutual filed a petition in intervention and First Rio filed a motion

---

[6] *See Patient Advocates of Tex. v. Texas Workers' Comp. Comm'n*, 80 S.W.3d 66, 81 (Tex. App.—Austin 2002), *aff'd in part and rev'd in part*, 136 S.W.3d 643, 657 (Tex. 2004) ("[W]e cannot say that a private insurance carrier's act of reviewing medical bills and determining a reimbursement amount when no [maximum allowable reimbursement] has been established falls within the legal definition of a delegation.").

7

to sever the injunctive claims and transfer them to Cameron County.[7]  At the hearing, the district court entered a TRO enjoining First Rio from pursuing its existing suits and filing new suits that seek "payment for medical services provided to injured workers under the Texas workers' compensation system."  Soon thereafter, Continental Casualty and the State Office of Risk Management also filed petitions in intervention.

On July 1 and 2, 2002, the district court held a hearing on appellees' request for a temporary anti-suit injunction as to the Cameron County lawsuits.  Dr. Howell testified at the hearing that he planned to file suits every time that a bill is denied or reduced and to continue to do so unless the court told him otherwise.  On July 5, the district court granted the temporary injunction, enjoining First Rio from filing any new lawsuits until receiving a final order from the Commission "ordering a carrier to pay Howell/First Rio and that payment has not been made as required by law" and from pursuing the suits already filed unless the suit is to enforce a Commission order.  The court's order also set the case for trial on the non-jury docket for September 30, 2002.  Soon thereafter, First Rio filed two actions in this Court:  an interlocutory appeal of the temporary injunction, which was subsequently dismissed as moot after final judgment was rendered in this case,[8] and a petition for writ of mandamus challenging the district court's authority to grant the

---

[7]  On the record before us, it does not appear that First Rio requested a hearing on these motions.

[8]  *Howell v. Texas Workers' Comp. Comm'n*, No. 03-02-00502-CV, 2003 Tex. App. LEXIS 7467 (Austin—Aug. 29, 2003, no pet.) (not designated for publication).

8

temporary injunction, which was denied because First Rio had an adequate remedy by its interlocutory appeal.[9]

The case was later assigned to a specific district court, which did not have time available on its docket for the September 30, 2002 trial setting. The Commission, after conferring with other parties, then set the case for a non-jury trial on December 10, 2002. In mid-October, after the trial had been reset for December 10, First Rio filed a jury demand and jury fee. On November 18, the attorneys for First Rio obtained an *ex parte* TRO in another cause of action in Cameron County prohibiting Texas Mutual from pursuing various lawsuits against First Rio, including the instant case. The TRO expired fourteen days later. *See* Tex. R. Civ. P. 680. On December 3, Texas Mutual filed a motion to strike First Rio's jury demand, on the grounds that the demand was inconsistent with First Rio's agreement, not filed a reasonable time before trial, would injure other parties in the suit, would disrupt the court's docket, and was filed for the purpose of delay. First Rio filed a motion for continuance the next day on the ground that a medical condition prevented Dr. Howell from being available for trial.

On December 10, in preliminary matters to the trial, the district court granted Texas Mutual's motion to strike First Rio's jury demand and denied First Rio's motion for continuance. The case proceeded to a three-day, non-jury trial on the merits beginning on December 11. At the conclusion of the trial, the district court granted declaratory relief requiring payment disputes to be

---

[9] *In re Howell*, No. 03-02-00490-CV (Tex. App.—Austin Aug. 14, 2002) (orig. proceeding) (not designated for publication).

handled through the Commission's administrative procedures and issued a permanent injunction enjoining First Rio from filing new suits and pursuing the suits already filed in Cameron County except as allowed by rule or statute. The court also stated an intention to award attorney's fees to the prevailing parties.

During the trial, Texas Mutual filed a motion for sanctions against First Rio's law firm, pursuant to rule of civil procedure 13 and the court's inherent authority. In this motion, Texas Mutual alleged that the attorneys had "embarked in a litigation campaign" that constituted a "bad-faith abuse of the judicial process," filed "false affidavits and frivolous pleadings," "obstructed the discovery process," and abused the judicial process in obtaining the *ex parte* TRO in another case. Texas Mutual filed an amended motion for sanctions on January 8, 2003, adding rule of civil procedure 215 as a basis for sanctions. The court held a hearing on this motion on January 17, 2003, at which representatives of the law firm and Texas Mutual's attorney presented evidence. Shortly thereafter, Texas Mutual filed a supplement to its amended motion. On March 25, 2003, the district court entered an order granting the amended motion for sanctions in which it found, *inter alia*, that the respondents had: obtained the *ex parte* TRO "for the purpose of preventing discovery and delaying trial," "engaged in extraordinary efforts to prevent Texas Mutual from taking the depositions of the Respondents' clients," "designed and carried out a vexatious litigation campaign," and "made false statements of material fact to the Court" at the hearing on the motion for sanctions. The court also awarded $13,000 in attorney's fees sanctions to Texas Mutual.

The district court *sua sponte* imposed further sanctions upon the law firm after counsel for First Rio did not appear at the May 28, 2003 hearing on the motion for judgment. The

10

hearing was held after discussions in the preceding months among the parties about the proposed judgment. At the hearing, counsel for the Commission stated that counsel for First Rio that morning had faxed a letter asserting objections to the proposed final judgment. After hearing evidence that counsel for First Rio had received notice of the proposed final judgment well in advance of the hearing, the district court imposed sanctions of $3,200 upon the law firm, representing two hours in attorney's fees for each of the eight counsel present at the hearing.

The court then rendered a final judgment in favor of appellees, declaring that the IRO fee provisions are constitutional; declaring that if First Rio disputes the adequacy of payment for health care provided under the workers' compensation act, it must first exhaust administrative remedies and pursue judicial review in Travis County; enjoining First Rio from pursuing the suits filed in Cameron County and filing new suits until after exhaustion of administrative remedies; imposing $13,000 in sanctions on the law firm; and awarding attorney's fees to Texas Mutual, the Commission, and Continental Casualty pursuant to their declaratory judgment actions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). The court entered an order granting the additional $3,200 in attorney's fees sanctions on June 10, 2003.

First Rio and its law firm subsequently requested findings of fact and conclusions of law, which the court issued on July 17, 2003. Included in the findings were thirty-six stipulated matters that the parties had filed with the court in May 2003 and sixteen additional oral stipulations that had been read into the record at trial. We now turn to our analysis of appellants' issues, beginning with First Rio's issues on appeal.

11

## ANALYSIS

### *First Rio's Appeal*

#### *Jurisdiction of the District Court*

In its first issue, First Rio contends that the Travis County district court was without jurisdiction to issue an anti-suit injunction (i) to stay proceedings in suits pending in Cameron County (ii) against First Rio and Dr. Howell, parties not domiciled in Travis County. First Rio further contends that the district court was without jurisdiction to address appellees' counterclaims because jurisdiction already had been established in Cameron County.

Subject-matter jurisdiction is essential to the authority of a court to decide a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Whether a trial court has subject-matter jurisdiction is a question of law that we review *de novo*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998). When conducting a *de novo* review, the appellate court exercises its own judgment and redetermines each legal issue, giving no deference to the trial court's decision. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1999) (op. on reh'g).

At the outset, we reject First Rio's assertion that, because jurisdiction had already been established in Cameron County, the Travis County district court was entirely without jurisdiction to address appellees' counterclaims. In March 2002, First Rio filed—in Travis County—its suit for declaratory relief against the Commission and Envoy Medical. Envoy filed its answer in May 2002. The Commission filed its answer and counterclaims in June 2002. In late June and early July, Texas Mutual, Continental Casualty, and the State Office of Risk Management filed petitions in intervention. In the meantime, in May and June 2002, First Rio filed its suits in Cameron

12

County against several workers' compensation insurance carriers, including Texas Mutual and Continental Casualty, seeking payment for medical bills that the carriers had either partially paid or denied. First Rio itself established jurisdiction in Travis County before filing the suits in Cameron County. We now turn to an examination of whether venue for the anti-suit injunction was mandatory in Cameron County.

First Rio asserts that venue is mandatory in Cameron County because the venue of a proceeding for injunctive relief against a party "shall" be in the county in which the party is domiciled or, to stay proceedings in a suit, "must" be tried in the court in which the suit is pending:

(a) Except as provided by Subsection (b), a writ of injunction against a party who is a resident of this state shall be tried in a district or county court in the county in which the party is domiciled. If the writ is granted against more than one party, it may be tried in the proper court of the county in which either party is domiciled.

(b) A writ of injunction granted to stay proceedings in a suit or execution on a judgment must be tried in the court in which the suit is pending or the judgment was rendered.

Tex. Civ. Prac. & Rem. Code Ann. § 65.023 (West 1997). However, "the injunction venue statute applies only to suits in which the relief sought is purely or primarily injunctive." *In re Continental Airlines, Inc.*, 988 S.W.2d 733, 736 (Tex. 1998) (orig. proceeding) (citing *Ex parte Coffee*, 328 S.W.2d 283, 287 (Tex. 1959)). When the pleadings demonstrate that the issuance of a permanent injunction is the primary and principal relief sought in the lawsuit, venue is mandatory in the county of the party against whom the injunction is sought. *See Brown v. Gulf Television Co.*, 306 S.W.2d 706, 708 (Tex. 1957) (construing predecessor statute to section 65.023(a)). On the other hand, if a

13

review of the allegations and the prayer demonstrates that issuance of a permanent injunction would be merely ancillary to a judgment awarding declaratory relief, the mandatory venue requirement does not apply. *See id.* We must decide, then, whether the request for an anti-suit injunction was the primary relief sought or ancillary to the request for declaratory relief.

To be entitled to injunctive relief, a plaintiff must prove the existence of a wrongful act, imminent harm, irreparable injury, and the absence of an adequate legal remedy. *See Morris v. Collins*, 881 S.W.2d 138, 140 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Fear or apprehension of the possibility of injury is not sufficient; the plaintiff must prove that the defendant has attempted or intends to harm the plaintiff in the future. *See State v. Morales*, 869 S.W.2d 941, 946-47 (Tex. 1994).

In contrast, a declaratory judgment simply declares the rights, status, or other legal relations of the parties. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.003(a), (b) (West 1997) (trial court has "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed," and declaration has the "force and effect of a final judgment or decree"). The purpose of a declaratory judgment is to settle and to afford relief from uncertainty and insecurity with respect to these rights, status, and other legal relations. *See id.* § 37.002(b) (West 1997).

The law presumes that a defendant will recognize and respect the rights declared by a declaratory judgment and will abide by the judgment in carrying out its duties. *See Valley Oil Co. v. City of Garland*, 499 S.W.2d 333, 335-36 (Tex. Civ. App.—Dallas 1973, no writ). However, ancillary injunctive relief may be obtained when the evidence shows that the defendant will not comply with the judgment. *See Texas Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994).

14

The uniform declaratory judgments act authorizes a party to obtain supplemental ancillary relief, including a permanent injunction, to enforce a declaratory judgment. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.011 (West 1997) ("Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application must be by petition to a court having jurisdiction to grant the relief."); *Valley Oil Co.*, 499 S.W.2d at 336 (holding that declaratory judgment does not bar subsequent proceeding for coercive relief to enforce rights established by judgment when losing party contravenes judgment).

We must examine the petitions as a whole to determine whether the request for injunctive relief was primary or ancillary to the request for declaratory relief. The petitions demonstrate that the principal and primary relief sought is to establish by the court's decree the constitutionality of the IRO fee rule and the requirement that First Rio, in its adequacy of payment disputes, must exhaust administrative remedies before seeking relief in a court. The anti-suit injunction is ancillary to the declaratory relief in that it seeks to protect and enforce the rights established by the declaratory relief, that is, to bar First Rio from prosecuting the existing Cameron County suits, or filing new suits, before exhausting administrative remedies. Because the request for injunctive relief was filed as a counterclaim to First Rio's suit, venue in Travis County was proper. "Venue of the main action shall establish venue of a counterclaim, cross claim, or third-party claim properly joined under the Texas Rules of Civil Procedure or any applicable statute." Tex. Civ. Prac. & Rem. Code Ann. § 15.062(a) (West 2002). Accordingly, we conclude appellees could assert the anti-suit injunction in Travis County.

15

Having determined that venue was proper in Travis County, we must still address whether the Travis County district court had jurisdiction to issue an anti-suit injunction as to the suits pending in Cameron County. The jurisdiction of district courts to issue injunctions arises from article V, section 8 of the Texas Constitution, which provides that "District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art. V, § 8. "Subject to certain exceptions, state courts have authority to enjoin litigation in other state courts, either of their own or other states." *Ex parte Evans*, 939 S.W.2d 142, 143 (Tex. 1997) (orig. proceeding) (citing *Golden Rule Ins. Co. v. Harper*, 925 S.W.2d 649 (Tex. 1996)).

"An anti-suit injunction is appropriate in four instances: 1) to address a threat to the court's jurisdiction; 2) to prevent the evasion of important public policy; 3) to prevent a multiplicity of suits; or 4) to protect a party from vexatious or harassing litigation." *Golden Rule Ins. Co.*, 925 S.W.2d at 651 (citing *Gannon v. Payne*, 706 S.W.2d 304, 307 (Tex. 1986)). "A district court having jurisdiction of the parties and the subject matter may enjoin a party from prosecuting a cause of action in another court when such relief is necessary to prevent a multiplicity of suits, avoid vexatious litigation, or prohibit the use of the judicial processes for purposes of harassment." *University of Tex. v. Morris*, 344 S.W.2d 426, 428 (Tex. 1961).

Here, the Travis County district court found that it was necessary to enter permanent, anti-suit injunctive relief "to prevent vexatious litigation by Robert S. Howell, D.C. and First Rio Valley Medical, P.A. and the resulting disruption of the administrative process for workers'

16

compensation medical cost control."  The injunction enjoins not the Cameron County justice courts but instead enjoins First Rio and Dr. Howell—whom no one disputes were within the jurisdiction of the Travis County district court—from prosecuting the suits already filed in Cameron County or filing new adequacy-of-payment suits until first exhausting their administrative remedies.  We thus hold that it was within the jurisdiction of the Travis County district court to issue the anti-suit injunction.

First Rio further contends that the district court erred in finding that appellees' counterclaims are compulsory.  This finding occurred at the hearing on the temporary injunction, in which the court, before holding that it had jurisdiction to issue temporary injunctive relief, stated that "I do believe the counterclaim is a compulsory one.  In any case, it is a proper counterclaim."  Having found that appellees' counterclaims were within the district court's jurisdiction and that it was within the district court's jurisdiction to issue the anti-suit injunction, we need not address this point.  We overrule First Rio's first issue.

### Whether First Rio and Howell are "Vexatious Litigants"

In its eighth issue, First Rio contends that the district court erred in finding both First Rio and Dr. Howell "vexatious litigants" under section 11.054 of the civil practice and remedies code.  This provision generally pertains to repeated litigation against a defendant or relitigation of the same claims against a defendant after litigation has been finally determined against the plaintiff. *See* Tex. Civ. Prac. & Rem. Code Ann. § 11.054 (West 2002).  The district court made no such finding, nor did any party request relief under section 11.054.  Instead, the district court found that

17

First Rio, Dr. Howell, and their attorneys filed the Cameron County suits "as part of a plan of vexatious and harassing litigation," and that First Rio and Dr. Howell filed "groundless, multiple and vexatious lawsuits." Furthermore, the district court's grant of the anti-suit injunction was based in part on the prevention of vexatious litigation, *see Golden Rule Ins.*, 925 S.W.2d at 651, not on any finding that First Rio and Dr. Howell are "vexatious litigants." Because the district court did not make the finding of which First Rio complains, we have nothing to review. We overrule First Rio's eighth issue.

### *Extent of Commission's Jurisdiction over Medical Payment Disputes*

In its second issue, First Rio contends that the district court erred in holding that First Rio must exhaust administrative remedies in medical payment disputes before seeking relief in a court. In its final judgment, the district court ordered, in pertinent part, that "[i]n each instance when [First Rio] disputes the adequacy of payment under the Texas Workers' Compensation Act for health care services provided, . . . [First Rio] . . . is required to exhaust administrative remedies." First Rio asserts that the Commission has concurrent jurisdiction and therefore that health care providers may bring such disputes either through the Commission's administrative process or in the courts. The Commission, Texas Mutual, and Continental Casualty respond that the Commission has primary jurisdiction, which favors initial resolution of disputes by administrative agencies. The State Office of Risk Management takes the position that the Commission has exclusive jurisdiction, under which an agency alone has the authority to make the initial determination in a dispute. Because the statutory scheme demonstrates that the legislature has granted to the Commission the sole authority to make an initial determination of a medical fee or medical necessity dispute, we hold that the

18

Commission has exclusive jurisdiction over these disputes. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) (op. on reh'g).

We begin with a bedrock distinction between primary and exclusive jurisdiction: primary jurisdiction is prudential, whereas exclusive jurisdiction is jurisdictional. *Id.* at 220. Explaining the difference, the supreme court in *Subaru* observed:

> The judicially-created primary jurisdiction doctrine operates to allocate power between courts and agencies when both have authority to make initial determinations in a dispute. Trial courts should allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations.
>
> * * * *
>
> Conversely, under the exclusive jurisdiction doctrine, the Legislature grants an administrative agency the *sole* authority to make an initial determination in a dispute. An agency has exclusive jurisdiction "when a pervasive regulatory scheme indicates that Congress intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." Whether an agency has exclusive jurisdiction depends on statutory interpretation.

*Id.* at 221 (citations omitted); *see also Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15-18 (Tex. 2000). For either exclusive or primary jurisdiction to apply, an agency must have the authority to determine the controversy at issue. *See Subaru*, 84 S.W.3d at 221. If an agency has exclusive jurisdiction, typically a party must exhaust all administrative remedies before seeking judicial review of the agency's action. *Id.* (citing *Cash Am.*, 35 S.W.3d at 15). When exhaustion is required, courts have only limited review of the administrative action. *Id.*

"Determining if an agency has exclusive jurisdiction requires statutory construction and raises jurisdictional issues." *Id.* at 222. Whether an agency has exclusive jurisdiction is a question of law that we review *de novo*. *Id.* (citing *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex. 1999); *Mayhew*, 964 S.W.2d at 928). We now turn to our determination of the extent of the Commission's jurisdiction over medical payment disputes, beginning with some historical background concerning the Texas workers' compensation system.

The workers' compensation system in Texas was created with the Employers' Liability Act of 1913. *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 510 (Tex. 1995). Under that system, a physician was required to present a claim for payment of a medical fee to the Industrial Accident Board ("IAB") before seeking a remedy in court. *Lumbermen's Reciprocal Ass'n v. Wilmoth*, 12 S.W.2d 972, 973 (Tex. Comm'n App. 1929, judgm't adopted as reformed in part and reversed and dismissed in part) (quoting statute under old act[10] which stated that "[a]ll questions arising under this law, if not settled by agreement of the parties interested therein and within the provisions of this law, shall, except as otherwise provided, be determined by the board"). For an employee found to have suffered a compensable injury, the rights and obligations of the employee and the health care provider treating the employee were "governed entirely by the Workers' Compensation Act." *McCollum v. Baylor Univ. Med. Ctr.*, 697 S.W.2d 22, 25 (Tex. App.—Dallas 1985, no writ) (citing *Smith v. Stephenson*, 641 S.W.2d 900, 902 (Tex. 1982)).

---

[10] *See* Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, part II, § 5, 1917 Tex. Gen. Laws 269, 283-84, *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, § 6.61, 1989 Tex. Gen. Laws 1, 60-61, *repealed by* Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 5(2), 1993 Tex. Gen. Laws 987, 1273.

Our Court determined, under the IAB system, that "[f]or a district court to exercise jurisdiction over a workers' compensation dispute, . . . the claim sued upon *must* first have been presented to the Commission." *Methodist Hosps. of Dallas v. Texas Workers' Comp. Comm'n*, 874 S.W.2d 144, 149 (Tex. App.—Austin 1994, no writ) (op. on reh'g) (emphasis added) (citing *Johnson v. American Gen. Ins. Co.*, 464 S.W.2d 83, 84 (Tex. 1971)). "This jurisdictional requirement specifically applies to the issue of whether a hospital bill is fair and reasonable." *Id.* (citing *Rodriguez v. American Gen. Fire & Cas. Co.*, 788 S.W.2d 583, 585 (Tex. App.—El Paso 1990, writ denied)).

In 1989, in response to sharply rising costs of claims and premiums, the legislature enacted the new workers' compensation act ("the Act"), *Garcia*, 893 S.W.2d at 512-13, administered by the Texas Workers' Compensation Commission. Tex. Lab. Code Ann. § 402.001 (West 1996). The Act "vests the power to award compensation benefits solely in the Workers' Compensation Commission (formerly the Industrial Accident Board), subject to judicial review." *American Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 803 (Tex. 2001) (quoting *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 612 (Tex. 1996)). The Act additionally "strengthens the enforcement and adjudicatory powers of the Commission," *Garcia*, 893 S.W.2d at 514, including a grant of authority to assess administrative penalties against a health care provider for administrative violations. *See* Tex. Lab. Code Ann. § 415.003 (West 1996) (administrative violations as to health care providers), § 415.021 (West Supp. 2004) (Commission power to assess administrative penalties).

21

The Act and accompanying rules dictate entitlement to medical care. An employee "who sustains a compensable injury is entitled to all health care reasonably required by the nature of the injury as and when needed." *Id.* § 408.021(a) (West 1996). "Except in an emergency, the commission shall require an employee to receive medical treatment from a doctor chosen from a list of doctors approved by the commission. A doctor may perform only those procedures that are within the scope of the practice for which the doctor is licensed." *Id.* § 408.022(a) (West 1996).

The Act and accompanying rules also speak in mandatory terms concerning the procedure for payment of a medical bill and related disputes. When seeking payment from a workers' compensation insurance carrier, a health care provider "shall" submit the medical bill to the carrier. 28 Tex. Admin. Code § 134.801(a) (2004). "An insurance carrier shall pay the fee allowed under Section 413.011 for a service rendered by a health care provider not later than the 45th day after the date the insurance carrier receives the charge unless the amount of the payment or the entitlement to payment is disputed." Tex. Lab. Code Ann. § 408.027(a) (West Supp. 2004).

In the event of a dispute, the Commission "by rule shall establish: a program for . . . review and resolution of a dispute regarding health care treatments and services." *Id.* § 413.013(1). If an insurance carrier "disputes the amount of payment or the health care provider's entitlement to payment, the insurance carrier shall send to the commission, the health care provider, and the injured employee a report that sufficiently explains the reasons for the reduction or denial of payment for health care services provided to the employee. The insurance carrier is entitled to a hearing." *Id.* § 408.027(d). "A party, including a health care provider, is entitled to a review of a medical service provided or for which authorization of payment is sought if a health care provider is: denied

22

payment or paid a reduced amount for the medical service rendered." *Id.* § 413.031(a)(1). The review is conducted by the medical review division in the case of a medical fee dispute, 28 Tex. Admin. Code § 133.307, and by an IRO in the case of a medical necessity dispute. *Id.* § 133.308. "In resolving disputes over the amount of payment . . ., the role of the commission is to *adjudicate* the payment given the relevant statutory provisions and commission rules." Tex. Lab. Code Ann. § 413.031(c) (emphasis added).

After review of either a medical fee or medical necessity dispute, the nonprevailing party may request a contested case hearing before SOAH. *Id.* § 413.031(k); 28 Tex. Admin. Code § 133.307(p) (medical fee disputes), § 133.308(u) (medical necessity disputes). A party who has exhausted its administrative remedies and is aggrieved by a final SOAH decision concerning a medical fee or medical necessity dispute may seek judicial review of the decision in a Travis County district court as governed by chapter 2001 of the government code. Tex. Lab. Code Ann. § 413.031(k); 28 Tex. Admin. Code § 133.307(p)(4) (medical fee disputes), § 133.308(u)(7) (medical necessity disputes); *see* Tex. Gov't Code Ann. § 2001.176(b)(1) (requiring request for judicial review to be filed in Travis County unless otherwise provided by statute). The supreme court, in its *Patient Advocates* decision, contemplates that a party to a medical fee dispute must exhaust administrative remedies before seeking review in a court:

> [C]arriers do not make the final determination of the fees for disputed claims. If a carrier and a provider disagree on the reimbursement amount, [the Commission], not the carrier, makes the decision on the proper payment, subject to review. *See* Tex. Lab. Code Ann. §§ 413.013(1), 413.031(a); 28 Tex. Admin. Code §§ 133.304(m), (p), 133.305(b)(3)-(4). Any party that is not satisfied with the outcome may continue the review process through SOAH and then the courts. Tex. Lab. Code Ann. § 413.031(d).

23

*Patient Advocates of Tex. v. Texas Workers' Comp. Comm'n*, 136 S.W.3d 643, 656-57 (Tex. 2004).

The statutory scheme, and cases interpreting that scheme, demonstrate that the Commission has the exclusive authority to adjudicate medical fee and medical necessity disputes before a health care provider may seek relief in court. Pursuant to the Act vesting "the power to award compensation benefits solely in the" Commission, *Fodge*, 63 S.W.3d at 803 (quoting *Saenz*, 925 S.W.2d at 612), the Commission has jurisdiction of disputes over reimbursement of medical expenses. *Id.* at 803 & n.9 (citing Tex. Lab. Code Ann. § 413.031) ("Medical Dispute Resolution").

Relying on *Fodge*, our sister court in Fort Worth determined that a health care provider could not pursue tort claims against a workers' compensation insurance carrier arising from denial of payment without first exhausting administrative remedies with the Commission. *Bone v. Utica Nat'l Ins. Co. of Tex.*, No. 02-02-00209-CV, 2003 Tex. App. LEXIS 6833, at *14 (Fort Worth Aug. 7, 2003, pet. denied) (not designated for publication). The court held that because the doctors "never pursued their administrative remedies as to that denial, and because the damage claims in the amount of the charges for the medical services could not be adjudicated without also adjudicating [the doctors'] entitlement to payment for the services, *a matter solely within the [Commission's] exclusive jurisdiction*, the extra-contractual claims [against the carriers] were not within the trial court's jurisdiction." *Id.* (citing *Fodge*, 63 S.W.3d at 804) (emphasis added); *see also Bone v. Corvel Corp.*, No. 02-02-00303-CV, 2003 Tex. App. LEXIS 5215, at *9 (Fort Worth June 19, 2003, pet. denied) (not designated for publication) (holding that because physicians did not appeal denial of medical payments with Commission, they "are not entitled to judicial review of their claims").

24

Because the statutory scheme demonstrates that the legislature has granted to the Commission the sole authority to make the initial determination in a medical fee or medical necessity dispute, we hold that the Commission has exclusive jurisdiction over these disputes. *See Subaru*, 84 S.W.3d at 221. Accordingly, First Rio must first exhaust the administrative remedies provided for within the Commission's regulatory scheme before seeking to resolve a medical fee or medical necessity dispute in a court. We overrule First Rio's second issue.

### *Denial of First Rio's Demand for a Jury Trial*

In its third issue, First Rio asserts that the district court erred in denying its demand for a jury trial. We apply an abuse of discretion standard of review to a court's denial of a request for a jury trial. *Mercedes-Benz Credit Corp. v. Rhyne*, 925 S.W.2d 664, 666 (Tex. 1996). We may reverse a trial court under this standard only when we find that "the court acted in an unreasonable or arbitrary manner," *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991), or "without regard for any guiding rules or principles." *Owens Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (quoting *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995)). The trial court does not abuse its discretion if some evidence reasonably supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (op. on reh'g) (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)).

The Texas Constitution guarantees a jury trial. Tex. Const. I, § 15. However, the right to a trial by jury is not absolute in civil cases. A party must comply with the procedure set forth in rule of civil procedure 216: not less than thirty days before the date set for trial of the cause on the non-jury docket, the party must file a written request for a jury and pay a jury fee. Tex. R. Civ.

25

P. 216; *see Rhyne,* 925 S.W.2d at 666. If the request is made more than thirty days before trial, it is presumed timely requested. *Halsell v. Dehoyos*, 810 S.W.2d 371, 371 (Tex. 1991) (citing *Wittie v. Skees*, 786 S.W.2d 464, 466 (Tex. App.—Houston [14th Dist.] 1990, writ denied)). To overcome the presumption, the adverse party must show that "the granting of a jury trial would operate to injure the adverse party, disrupt the court's docket, or impede the ordinary handling of the court's business." *Id.* (citing *Wittie*, 786 S.W.2d at 466).

As a preliminary matter, we address Texas Mutual's assertion that First Rio has waived its challenges to the district court's findings of fact concerning the jury demand. First Rio challenged the findings of fact only in its reply brief. The rules of appellate procedure do not allow an appellant to include in a reply brief a new issue in response to some matter pointed out in the appellee's brief but not raised by appellant's original brief. *See* Tex. R. App. P. 38.3; *Barrios v. State*, 27 S.W.3d 313, 322 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) ("Pointing out the *absence* of an appellant's argument does not raise the argument or entitle appellant to assert that argument for the first time in his reply brief. If the rule were construed otherwise, an appellee could never point out matters not raised by an appellant for fear of reopening the door."). A party waives its challenges to the findings of fact and conclusions of law if it fails to raise them in its original appellate brief. *See In re A.M.*, 101 S.W.3d 480, 486 (Tex. App.—Corpus Christi 2002, pet. filed); *Smith v. Hues*, 540 S.W.2d 485, 489 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). Because First Rio did not raise its challenges to the findings of fact until its reply brief, the findings of fact are binding on this Court and the parties, and are entitled to the same weight as a jury verdict,

26

unless the contrary is established as a matter of law or there is no evidence to support the findings. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

Concerning the trial setting, on October 3, 2002, counsel for the Commission, after conferring with other counsel, including counsel for First Rio, set the case for a non-jury trial on December 10. On November 5, First Rio filed a jury demand and paid the jury fee. On December 3, Texas Mutual filed a motion to strike First Rio's jury demand, contending that the demand would result in injury to other parties, disrupt the trial court's docket, and impede the ordinary handling of the court's business. Texas Mutual further contended that there were no fact issues to be tried and the jury demand was filed for the purpose of delay. On the day of trial, First Rio requested a continuance because of Dr. Howell's health, which motion the district court denied. The court, after hearing arguments, then granted Texas Mutual's motion to strike the jury demand.

The district court found in its findings of fact that First Rio filed the jury demand solely for the purpose of delay, initially making no attempt for a continuance or to reset the case for a jury week. The court further found that First Rio did not comply with local rule 2.9, which states that a request for a jury trial, after a non-jury setting of the case, "must be presented to a Judge upon notice and hearing." Travis (Tex.) Civ. Dist. Ct. Loc. R. 2.9(c). The court found that the jury demand "would have resulted in injury to the Commission and the other parties in this cause," harming IROs because some providers refused to pay IROs while this litigation was pending and harming other parties in workers' compensation disputes because "they will be unable to secure a prompt and fair resolution of their dispute as the legislature contemplated." Finally, the district court expressly found that the jury demand would "disrupt the Court's docket and interfere with the

27

ordinary handling of the Court's business" and that First Rio had made no showing of disputed issues of material fact.

The evidence supports the district court's findings. The record demonstrates that First Rio neither requested a continuance, nor a hearing on its demand for a jury trial, until the day of trial. The record also demonstrates that a jury trial setting would not be available until July 2003, which the district court could reasonably conclude would have caused harm to the parties in the interim, disrupted the court's docket, and interfered with the handling of the court's business. On the question of whether there were fact issues to be tried, First Rio contended at the hearing on its jury demand that there was a fact issue concerning a conspiracy among insurance carriers to "capture" the Commission, "evidence that has to be adduced inferentially." But First Rio did not assert this cause of action in its pleadings. Instead, its claims concerned the constitutionality and validity of the IRO fee rule and a request for injunctive relief to file requests for IRO review without paying a fee. The intervenors' counterclaims requested a declaration that First Rio is required to pursue medical fee disputes according to the Commission's statutes and rules, and injunctive relief enjoining First Rio from pursuing its litigation in Cameron County and filing further suits before exhausting administrative remedies. All of these were issues of law for the court to decide.

First Rio asserts nevertheless, relying on *Citizens State Bank of Sealy v. Caney Investments*, that "parties to a hearing on a permanent injunction are entitled to a jury." 746 S.W.2d 477, 478 (Tex. 1988). *Citizens State Bank of Sealy* is distinguishable on its facts. There, the opposing party did not contest the request for a jury demand and the trial court nevertheless denied the timely demand. *Id.* Here, Texas Mutual filed a motion to strike the jury demand on the grounds

28

that "the granting of a jury trial would operate to injure the adverse party, disrupt the court's docket, or impede the ordinary handling of the court's business." *See Halsell*, 810 S.W.2d at 371 (citing *Wittie*, 786 S.W.2d at 466). The evidence supports the district court's findings on these grounds. Accordingly, we cannot say that the district court abused its discretion in denying First Rio's demand for a jury trial. We overrule First Rio's third issue.

### *Propriety of Declaratory Relief*

In its fifth issue, First Rio asserts that the district court erred in granting declaratory relief because in doing so the court improperly rendered an advisory opinion. First Rio also contends that the Commission lacked standing to request declaratory relief. The purpose of a declaratory judgment is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b). "A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought." *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). Otherwise, the judgment amounts to no more than an advisory opinion, which a court does not have the power to give. *Lone Starr Multi Theatres, Inc. v. State*, 922 S.W.2d 295, 297 (Tex. App.—Austin 1996, no writ) (citing *Southwest Airlines Co. v. Texas High-Speed Rail Auth.*, 863 S.W.2d 123, 125 (Tex. App.—Austin 1993, writ denied)). An "advisory opinion" decides an abstract question of law without binding the parties. *Hays County v. Hays County Water Planning P'ship*, 106 S.W.3d 349, 358 (Tex. App.—Austin 2003, no pet.).

The Commission, Texas Mutual, and Continental Casualty sought, in response to First Rio's constitutional challenge of the IRO fee provision and its suits in Cameron County, declarations that: the IRO fee provisions are constitutional; First Rio must exhaust administrative remedies before seeking review of a dispute in a court; and the only circumstance in which First Rio may sue for court-ordered payments of medical fees due under the workers' compensation act is after a final, non-appealable administrative decision has been rendered in its favor and the carrier or other payor has refused to pay. The district court granted the requests for declaratory relief in full.

Unlike an advisory opinion, these declarations did not concern hypothetical claims or abstract questions of law. The declarations went to the heart of the controversy between the parties: whether the IRO fee provision is constitutional and whether First Rio is required to exhaust administrative remedies before seeking relief in a court for payment of medical services to a workers' compensation claimant. A trial court has the discretion to enter a declaratory judgment as long as it will serve a useful purpose or will terminate the controversy between the parties. *Beadle*, 907 S.W.2d at 468. Because the controversy between the parties can be resolved by the declarations sought, *id.* at 467, we cannot say that the district court erred in granting the declaratory relief.

First Rio also contends that the Commission lacks standing to seek declaratory relief because it is not a "person" under section 37.001 of the civil practice and remedies code. Under the uniform declaratory judgments act ("UDJA"), a "person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the . . . statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." Tex. Civ. Prac. &

Rem. Code Ann. § 37.004(a) (West 1997). "'[P]erson' means an individual, partnership, joint-stock company, unincorporated association or society, or municipal or other corporation of any character." *Id.* § 37.001 (West 1997).

First Rio cites us to no authority, and we find none, barring the Commission from seeking declaratory relief *as a counterclaimant*. First Rio requested a declaration that the IRO fee rule is unconstitutional and invalid; the Commission, as a counterclaimant, requested declarations that the fee rule is constitutional and that First Rio, when seeking payment for medical services to workers' compensation claimants, is required to exhaust administrative remedies before seeking relief in a court. These counterclaims arose from First Rio's original action. Historically, although standing was not at issue, courts have allowed the State and counties to assert declaratory judgment actions. *See, e.g.*, *Duncan v. Pogue*, 759 S.W.2d 435, 435 (Tex. 1988) (commissioners court as counterclaimant); *City of San Antonio v. Texas Att'y Gen.*, 851 S.W.2d 946, 947 (Tex. App.—Austin 1993, writ denied) (attorney general as counterclaimant); *Falls County v. Perkins & Cullum*, 798 S.W.2d 868, 869 (Tex. App.—Fort Worth 1990, no writ) (county as claimant); *Feinman v. State*, 717 S.W.2d 106, 107 (Tex. App—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (State as counterclaimant). Given this precedent and that the UDJA is to be "liberally construed and administered," Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b), we hold that the Commission had standing to assert its counterclaims for declaratory relief. We overrule First Rio's fifth issue.

### *Propriety of Award of Attorney's Fees in the Declaratory Judgment Action*

In its fourth issue, First Rio asserts that the district court erred in awarding attorney's fees under the UDJA because the request for declaratory relief parroted the request for injunctive

relief and sought no more than a declaration concerning the validity of a rule. First Rio further asserts that the district court abused its discretion in awarding attorney's fees because the fees exceed permissible rates for attorney's fees in Travis County.

It is an abuse of discretion to award attorney's fees under the UDJA when the relief sought is no greater than relief that otherwise exists by agreement or statute. *See Strayhorn v. Raytheon E-Systems, Inc.*, 101 S.W.3d 558, 572 (Tex. App.—Austin 2003, pet. denied); *University of Tex. v. Ables*, 914 S.W.2d 712, 717 (Tex. App.—Austin 1996, no writ). "There is no basis for declaratory relief when a party is seeking in the same action a different, enforceable remedy, and a judicial declaration would add nothing to what would be implicit or express in a final judgment for the enforceable remedy." *Universal Printing Co. v. Premier Victorian Homes, Inc.*, 73 S.W.3d 283, 296 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). It is an abuse of discretion, therefore, to award attorney's fees under the UDJA when the statute is relied upon solely as a vehicle to recover attorney's fees. *Raytheon E-Systems*, 101 S.W.3d at 572.

The Commission, Texas Mutual, and Continental Casualty sought declarations that: the IRO fee provisions are constitutional; First Rio is required to exhaust administrative remedies before seeking review of a dispute in a court; and that the only circumstance in which First Rio may sue for court-ordered payments of medical fees due under the workers' compensation act is after a final, non-appealable administrative decision in favor of First Rio has been rendered and the carrier or other payor has refused to pay. The request for injunctive relief sought an injunction barring First Rio from pursuing the Cameron County lawsuits that it had already filed or filing new suits for medical payments until it had obtained a final, non-appealable decision in its favor and the payor had

32

refused to pay. Whereas the declaratory relief pertains to the constitutionality of the IRO fee provisions and exhaustion of administrative remedies before the Commission, the injunctive relief pertains to First Rio's pending and prospective suits. If appellees had prevailed on their request for injunctive relief but not the declaratory relief, the relief would not be the same. Accordingly, the declaratory relief does not parrot the injunctive relief.

First Rio further asserts that it was an abuse of discretion to award attorney's fees under the UDJA because appellees requested no more than a declaration concerning the validity of a rule. Appellees sought declaratory relief in part based on section 2001.038 of the administrative procedure act ("APA"), which allows a court to render a declaratory judgment concerning the validity or application of a rule. Tex. Gov't Code Ann. § 2001.038 (West 2000). When a party "files a proceeding that *only* challenges the validity of an administrative rule, the parties are bound by the APA and may not seek relief under the UDJA because such relief would be redundant." *Texas State Bd. of Plumbing Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 753 (Tex. App.—Austin 2000, pet. dism'd by agr.) (emphasis added). Here, the declaratory relief sought more than a declaration concerning the validity of a rule: it sought a declaration concerning exhaustion of administrative remedies in medical payment disputes. Accordingly, appellees were entitled to seek attorney's fees under the UDJA.

First Rio further asserts that the district court abused its discretion by awarding unreasonable attorney's fees that exceed the permissible rate for attorney's fees in Travis County. First Rio contends that the permissible rate is $200 per hour, because that is the rate at which the district court awarded its *sua sponte* attorney's fees sanction. The district court's authority to award

33

attorney's fees under the UDJA does not equate with its authority to award sanctions. In "any proceeding" under the UDJA, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009. The UDJA "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). In reviewing a fee award under the UDJA, we must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust. *Id.*

At the conclusion of the trial on the merits, attorneys for the appellees presented extensive testimony and exhibits as to the reasonableness and necessity of their fees, including their time spent on the case, their usual and customary rates, the difficulty of the issues, and their expertise. The district court awarded to Texas Mutual, Continental Casualty, and the Commission part, but not all, of the fees requested. On the record before us, we cannot say that the district court abused its discretion in awarding attorney's fees pursuant to appellees' declaratory judgment actions. We overrule First Rio's fourth issue.

### *Judgment Against Dr. Howell, Individually*

In its sixth issue, First Rio asserts that the district court erred in awarding counterclaim relief against Dr. Howell, individually, because he is not a proper party to the counterclaims. First Rio raises this issue on the ground that Dr. Howell was not a party in any of the

34

Cameron County suits. The evidence supports the district court's finding that "Howell filed this lawsuit; he is . . . estopped from challenging his own status as a proper party to the lawsuit he instituted." In any event, First Rio fails to cite any authority or direct us to any part of the appellate record in support of its argument. *See* Tex. R. App. P. 38.1(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Having presented nothing for our review, First Rio has waived this argument. We overrule First Rio's sixth issue.

### *Constitutionality of District Court's Rulings and IRO Fee Rules*

In its seventh and ninth issues, First Rio contends that the district court's (i) issuance of a permanent injunction violated the right to contract; (ii) declaration that the IRO fee rules are constitutional violates the open courts provision of the Texas Constitution; (iii) declaration that First Rio must exhaust administrative remedies before seeking resolution of a medical payment dispute in a court is unconstitutional for all disputes under $200; and (iv) variance between its oral ruling and final judgment denies First Rio due process of law.

First Rio begins with the contention that by enjoining First Rio's and Dr. Howell's "assigns," the permanent injunction impairs First Rio's right to contract. *See* Tex. Const. art. I, § 16 (stating that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made"). We disagree. This constitutional provision applies to "laws," which do not include decisions of a court: "a decision of a court is not a law, within the provisions of the Constitution relating to impairment of contracts." *Amalgamated Transit Union, Local Div. 1338 v. Dallas Pub. Transit Bd.*, 430 S.W.2d 107, 119 (Tex. Civ. App.—Dallas 1968,

35

writ ref'd n.r.e.) (citing *Storrie v. Cortes*, 38 S.W. 154, 156 (Tex. 1896) (discussing United States Constitution)).

First Rio next asserts that the district court erred in declaring that the IRO fee rules are constitutional because the fees are an unreasonable financial barrier to the courts, in violation of the open courts provision of the Texas Constitution. Article I, section 13 of the Texas Constitution provides in part that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." Tex. Const. art. I, § 13. The open courts provision includes at least three separate guarantees: "(1) courts must actually be operating and available; (2) the Legislature cannot impede access to the courts through unreasonable financial barriers; and (3) meaningful remedies must be afforded, 'so that the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress.'" *Garcia*, 893 S.W.2d at 520 (quoting *Trinity River Auth. v. URS Consultants, Inc*., 889 S.W.2d 259, 261 (Tex. 1994)). Pursuant to this provision, Texas citizens asserting common-law causes of action may not be unreasonably denied access to the courts. *Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex. 1983).

A claim of unconstitutionality under the open courts provision will succeed if the claimant (1) has a cognizable common-law cause of action being restricted by a statute, and (2) the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Rose v. Doctors Hosp*., 801 S.W.2d 841, 843 (Tex. 1990); *Sax*, 648 S.W.2d at 666. In applying this test, we consider both the statute's general purpose and the extent to which the claimant's right to bring a common-law cause of action is affected. *Sax*, 648 S.W.2d at 666.

36

Assuming without deciding that First Rio has a cognizable common-law cause of action for judicial review of a workers' compensation medical payment dispute, we will examine whether the fee is an unreasonable or arbitrary restriction when balanced against the purpose and basis of the statute. *Rose*, 801 S.W.2d at 843. In 2001, the legislature amended the labor code to provide that IROs would perform medical necessity reviews.[11] The fee for review by a medical doctor is a "tier one" fee, $650, and the review by other health care providers, including chiropractors, is a "tier two" fee, $460. 28 Tex. Admin. Code §§ 12.403, 133.308(r)(6). For support of its assertion that these fees impair its access to the courts, First Rio relies on *LeCroy v. Hanlon*, in which the supreme court held that although "[f]iling fees and court costs are usually constitutional," a filing fee that goes to state general revenues is an "unreasonable imposition[] on the state constitutional right of access to the courts." 713 S.W.2d 335, 342 (Tex. 1986).

Here, the parties stipulated that participation within the workers' compensation system is voluntary. They further stipulated that the "IRO rule sets fees for the IRO's services. The applicable fee is paid to the IRO, not to the Treasury of the State or to the [Commission]." A representative for Envoy testified that the fee pays for the IRO's services and administrative expenses in handling the medical necessity reviews. Additionally, the parties stipulated that if the

---

[11] Act of May 25, 2001, 77th Leg., R.S., ch. 1456, § 6.04, 2001 Tex. Gen. Laws 5167, 5186 (codified at Tex. Lab. Code Ann. § 413.031(e)).

health care provider prevails in the IRO process, Commission rules provide that the Commission will order the carrier to reimburse the fee to the health care provider. 28 Tex. Admin. Code § 133.308(r)(2). We do not find that the fee is an unreasonable or arbitrary restriction when balanced against the purpose and basis of the statute, *Rose*, 801 S.W.2d at 843, nor does the fee impermissibly go to state general revenues. *LeCroy*, 713 S.W.2d at 342. Accordingly, we hold that the fee provisions do not violate the open courts provision of the Texas Constitution. Further, the Commission's rules allow for access to the courts after exhausting administrative review of a medical necessity dispute. 28 Tex. Admin. Code § 133.308(u)(7).

First Rio nevertheless contends that the restriction of judicial review of Commission decisions to Travis County impermissibly limits First Rio's access to the courts. Because First Rio did not assert this issue below, it has not preserved it for our review. *See, e.g.*, *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) (applying preservation-of-error requirement to constitutional challenge).

First Rio next asserts that the court's declaration that First Rio must exhaust administrative remedies before seeking resolution of a medical fee dispute in a court is unconstitutional for all disputes under $200. First Rio's ground for this argument is that justice of the peace courts have "exclusive jurisdiction in civil matters where the amount in controversy is two hundred dollars or less." Tex. Const. art. V, § 19. Having determined that the Commission has exclusive jurisdiction over medical fee and medical necessity disputes, we do not find any constitutional violation in this declaration.

First Rio's final constitutional claim is that a variance between the district court's oral and written rulings violates its due process rights. It does not. First Rio asserts that the district court orally denied appellees' requests for declaratory relief then granted the relief in the final judgment. The record demonstrates that the district court orally denied declaratory relief "that really is an injunction in the form of a declaration." First Rio further asserts that the district court admitted stipulations after the evidence was closed at the trial. The record demonstrates, however, that the parties entered the stipulations of which First Rio complains into the record during the trial. Having found no constitutional violations, we overrule First Rio's seventh and ninth issues.

### *The Law Firm's Appeal*

In their appeal, the law firm asserts that the district court abused its discretion by twice imposing sanctions upon it: first imposing $13,000 in attorney's fees pursuant to Texas Mutual's motion for sanctions and second *sua sponte* imposing $3,200 in sanctions after no representative of the law firm appeared at the hearing on the motion for final judgment. It further asserts that Texas Mutual waived its right to complain of pretrial conduct by failing to obtain a sanctions hearing before trial. Finding waiver as to one ground and error as to another, we nevertheless find that some evidence supports the other five grounds for imposition of sanctions pursuant to Texas Mutual's motion. We thus remand the issue for recalculation of sanctions in accordance with this opinion. As to the $3,200 in sanctions, although the district court did not afford the law firm an opportunity for notice and hearing, the law firm waived its complaint by not affording the district court an opportunity to correct its error.

39

*Waiver*

The law firm complains at the outset, as to the sanctions pursuant to Texas Mutual's motion, that Texas Mutual waived its right to complain of pretrial conduct by failing to obtain a sanctions hearing before trial. Generally, a party who fails to obtain a pretrial ruling on a discovery dispute that exists before trial waives any claim for sanctions based on that conduct. *Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993) (orig. proceeding). Here, Texas Mutual filed a motion to compel but did not obtain pretrial rulings on its discovery disputes. The evidence demonstrates that Texas Mutual was aware of the alleged discovery abuses before trial. We thus hold that Texas Mutual, by failing to obtain pretrial rulings, waived its objections to alleged conduct of which it was aware before trial. However, in addition to awarding sanctions based on rule of civil procedure 215, allowing sanctions for abuse of discovery, the district court also based its sanctions on rule of civil procedure 13 and its inherent authority. We must determine, then, whether the allegedly sanctionable conduct other than discovery abuse supports the imposition of sanctions.

*Sanctions upon Texas Mutual's Motion*

The law firm urges that the imposition of $13,000 in sanctions constituted an abuse of discretion. The decision to impose a sanction is left to the discretion of the trial court and will be set aside only upon a showing of a clear abuse of discretion. *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex. 1990). In addition to the imposition of sanctions for pretrial discovery abuses, the court imposed sanctions under rule of civil procedure 13 and its inherent authority. Under rule 13, an attorney's signature on a pleading constitutes a certificate that the pleading "is not groundless and brought in bad faith or groundless and brought for the purpose of harassment." Tex. R. Civ. P. 13.

40

"If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215-2b, upon the person who signed it, a represented party, or both." *Id.* Courts may, under rule 13, "impose sanctions against parties filing frivolous claims to deter similar conduct in the future and to compensate the aggrieved party by reimbursing the costs incurred in responding to baseless pleadings." *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596-97 (Tex. 1996).

Even in the absence of an applicable rule or statute, a court has the inherent authority to sanction parties for bad-faith abuses if it finds that to do so will "aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (quoting *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398 (Tex. 1979)). This inherent power to sanction exists only to the extent necessary to deter, alleviate, and counteract bad-faith abuse of the judicial process. *Onwuteaka v. Gill*, 908 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1995, no writ). A court cannot invoke its inherent power to sanction without some evidence and factual findings that the conduct complained of significantly interfered with the court's legitimate exercise of one of its traditional core functions. *Kennedy v. Kennedy*, 125 S.W.3d 14, 19 (Tex. App.—Austin 2002, pet. denied).

In addition to the sanctions for the alleged discovery abuses, the court imposed sanctions on six grounds, finding that the law firm: (i) obtained an *ex parte* TRO for the purpose of delaying trial, constituting a bad-faith abuse of the judicial process; (ii) obtained the signatures of forty-three chiropractors on identical affidavits without complying with their obligations under rule

41

of civil procedure 13 to investigate whether the doctors could in good faith execute the affidavits; (iii) "designed and carried out a vexatious litigation campaign by filing over 700 lawsuits in less than two months"; (iv) made false statements of material fact to the district court concerning their involvement in the filing of the lawsuits; (v) filed a motion to strike Texas Mutual's counsel in violation of rule of civil procedure 13; and (vi) filed a "patently frivolous" petition for writ of mandamus in this Court while simultaneously appealing the same ruling. We will address each of these grounds in turn.

Concerning the *ex parte* TRO, the district court found that "[r]espondents' conduct in obtaining the . . . TRO to restrain the pursuit or prosecution of this lawsuit, on behalf of a non-party who facially lacked any standing for such relief, constituted a bad faith abuse of the judicial process." The court imposed sanctions under its inherent authority based on violation of Cameron County local rule 1.3 because the respondents were aware of the identities of counsel for Texas Mutual before obtaining the TRO. *See* Cameron (Tex.) Civ. Dist. Ct. Loc. R. 1.3(B) (stating that counsel must certify in writing to court that "to the best of his knowledge the party against whom the relief is sought is not represented by counsel in the matter made the basis of the suit in which the relief is sought," that opposing party's counsel has been notified and does not wish to appear, or that counsel has "diligently attempted to notify such counsel and has been unable to do so"). The court further imposed sanctions under its inherent authority for violating rule of civil procedure 680, which states that "[n]o temporary restraining order shall be granted without notice to the adverse party" unless specific facts demonstrate that irreparable damage will result before notice and hearing.

The law firm does not dispute that it played a part in obtaining the TRO, nor does it dispute that it obtained the TRO without first notifying counsel for Texas Mutual. It instead asserts, without citing to authority, that the district court was without jurisdiction to impose sanctions against it for actions in another court. We disagree. A trial court has the inherent power to take action that will "aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity." *Eichelberger*, 582 S.W.2d at 398. This inherent power to sanction exists only to the extent necessary to deter, alleviate, and counteract bad-faith abuse of the judicial process. *Gill*, 908 S.W.2d at 280.

The evidence supports the court's imposition of sanctions on this ground. The application for the TRO listed Texas Mutual's attorney of record to be served with process, then stated that "[i]t is believed that notice prior to the issuance of the temporary restraining order will result in additional and unnecessary duplicitous litigation." This fails to comply with either the Cameron County local rule or rule of civil procedure 680. Further, it demonstrates that the law firm was aware before obtaining the TRO that Texas Mutual was represented by counsel. Accordingly, some evidence supports the district court's finding that obtaining the *ex parte* TRO constituted a bad-faith abuse of the judicial process.

As to the sanctions under rule of civil procedure 13 for failing to investigate whether the forty-three chiropractors could in good faith sign their affidavits, "[b]y its express language, Rule 13 applies only to pleadings, motions and other papers signed by attorneys." *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 730 (Tex. 1996) (orig. proceeding). Because the

43

chiropractors' affidavits were not signed by the attorneys, it was an abuse of discretion for the district court to base an imposition of sanctions under rule 13 on this ground. *Id.*

The court next found that the law firm "designed and carried out a vexatious litigation campaign by filing over 700 lawsuits in less than two months." We have already determined that it was within the district court's jurisdiction to issue an anti-suit injunction to prevent, among other things, vexatious litigation. The law firm, on behalf of First Rio, filed the declaratory action in this case challenging the constitutionality of the IRO fee provisions. Accordingly, it cannot deny that it was aware of the Commission's administrative review process for medical payment disputes. The parties stipulated that in May and June 2002, First Rio filed 723 suits in Cameron County justice courts. The law firm does not dispute that it drafted the petitions for the lawsuits. The record demonstrates that some of these lawsuits were factually groundless, filed after final, non-appealable orders denying payment to First Rio. Some of the other suits concerned claims that had already been settled. On the record before us, we cannot say that the district court abused its discretion in determining that the law firm "designed and carried out a vexatious litigation campaign."

We next review the determination that at the sanctions hearing, the law firm "made false statements of material fact to the Court, suggesting that [it] had little or no involvement in the filing of the lawsuits" in Cameron County. The court found that the law firm's conduct violated rules 3.03(a)(1) and (5) of the Texas Disciplinary Rules of Professional Conduct, which address duty of candor toward a tribunal. *See* Tex. Disciplinary R. Prof'l Conduct 3.03, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 1998).

44

In its response to Texas Mutual's motion for sanctions, the law firm stated that it had drafted the lawsuits but "[i]n disregard of counsel's instructions First Rio Valley filed all of the suits (on information and belief) during the period that counsel was out on medical leave." The response went on to state that the first notice the law firm had that the suits had been filed was the notice of the July 2002 TRO hearing. At the sanctions hearing, Maxwell stated that the vast majority of the suits were filed while he was out for back surgery. He further stated: "I don't think those contain my own personal signature on it. I think they were stamped." Soon after the sanctions hearing, but before the court issued the sanctions order, Maxwell stated in a letter to the court that it was not his "intent to infer that his signatures were stamped by persons outside his office" and that the lawsuits "were either signed by myself, stamp-signed by this office or signed by other counsel in Cameron County." Despite Maxwell's ameliorative letter, on the record before us, we cannot say that the district court abused its discretion in determining that counsel made false statements of material fact to the court.

We next review the district court's determination that the law firm filed a motion to disqualify Texas Mutual's counsel in violation of rule of civil procedure 13. Specifically, the court found that the motion was filed as a tactical weapon only, was groundless and without basis in law or fact, was brought in bad faith, and was brought for delay or harassment purposes only. Rule 3.08 of the Texas Disciplinary Rules of Professional Conduct sets forth rules concerning the lawyer as a witness in a client's case. Tex. Disciplinary R. Prof'l Conduct 3.08, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (West 1998). A comment to the rule states that although the rule "may furnish some guidance in those procedural disqualification disputes where the party seeking

disqualification can demonstrate actual prejudice to itself resulting from the opposing lawyer's service in the dual roles," *id.* cmt. 10, the rule "should not be used as a tactical weapon to deprive the opposing party of the right to be represented by the lawyer of his or her choice." *Id.*

In July 2002, the law firm called counsel for Texas Mutual as a witness at the temporary injunction hearing. In October 2002, two months before trial, the law firm filed a motion to disqualify Texas Mutual's counsel and his law firm on the ground that his testimony at the trial on the merits would be "adverse to the pled claims of Texas Mutual." The motion further stated that the counsel and his firm have not "met the requisite standards for their continuance in the representation of Texas Mutual Insurance Company." We note that the law firm did not set a hearing on the motion. On the record before us, we cannot say that the district court abused its discretion in finding that the law firm filed the motion to disqualify in violation of rule of civil procedure 13. *See In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002) ("In considering a motion to disqualify, the trial court must strictly adhere to an exacting standard to discourage a party from using the motion as a dilatory trial tactic.").

We next review the district court's determination that the law firm filed a "patently frivolous" petition for writ of mandamus in this Court while simultaneously appealing the same ruling. "Mandamus is an extraordinary remedy available only in limited circumstances to correct a clear abuse of discretion or the violation of a duty imposed by law when the relator has no adequate remedy by appeal." *In re Crow-Billingsley Air Park, Ltd.*, 98 S.W.3d 178, 179 (Tex. 2003) (citing *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 88 (Tex. 1997); *Walker v. Packer*, 827 S.W.2d 833, 839-44 (Tex. 1992)). This Court denied the petition for writ of mandamus on the ground that

46

a party challenging a temporary injunction has an adequate remedy by accelerated, interlocutory appeal. *In re Howell*, No. 03-02-00490-CV (Tex. App.—Austin Aug. 14, 2002) (orig. proceeding) (not designated for publication). On the record before us, we cannot say that the district court abused its discretion in determining that the law firm filed a "patently frivolous" petition for writ of mandamus.

Concerning the amount of the sanctions award, Texas Mutual sought $23,000 in attorney's fees sanctions; the court awarded $13,000. Because we affirm the grounds for the award only in part, we remand the issue for recalculation of attorney's fees sanctions in accordance with this opinion. The law firm further asserts that "[a]s further sanction, without notice or hearing, the judge erred in awarding interest on the sanctions in the final judgment." Having presented no citations to authorities or the record, it has not preserved this issue for our review. *See* Tex. R. App. P. 38.1(h).

### Sua Sponte *Sanctions*

A trial court has inherent power to impose sanctions on its own motion. *Bennett*, 960 S.W.2d at 40. We review the trial court's decision under an abuse of discretion standard. *Koslow's*, 796 S.W.2d at 704. In exercising its discretion in ordering sanctions, a trial court is limited by the Due Process Clause of the United States Constitution. *Bennett*, 960 S.W.2d at 40. When an attorney fails to complain of the sanction and fails to ask the trial court to reconsider its actions, however, the attorney waives any complaint about the trial court's action. *See* Tex. R. App. P. 33.1(a)(1) (stating that to preserve error for appeal, party must make timely and sufficiently specific objection in trial

court); *Kiefer v. Continental Airlines, Inc*., 10 S.W.3d 34, 41 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (finding sanctioned firm waived complaint by not objecting at trial court level).

The record does not demonstrate that the law firm contested the *sua sponte* sanctions or asked the court to reconsider its action. Thus, the district court had no opportunity to correct any error it may have perceived. *See Valdez v. Valdez*, 930 S.W.2d 725, 728 (Tex. App.—Houston [1st Dist.] 1996, no writ) (finding waiver because attorney never gave trial court opportunity to correct alleged error of imposing sanctions without notice). Because the law firm failed to preserve its complaint for appellate review as to the $3,200 in sanctions, we affirm the district court's imposition of these sanctions. Having affirmed only in part the sanctions upon Texas Mutual's motion, we reverse this award for recalculation in accordance with this opinion. We otherwise overrule the law firm's issues on appeal and decline to grant the law firm's request for attorney's fees in bringing its appeal.

**CONCLUSION**

As to First Rio's challenge to the district court's jurisdiction, we reject First Rio's assertion that, because jurisdiction had already been established in Cameron County, the Travis County district court was entirely without jurisdiction to address appellees' counterclaims. First Rio itself established jurisdiction in Travis County before filing the suits in Cameron County. Because the counterclaimants' request for injunctive relief was ancillary to its request for declaratory relief, the mandatory venue requirements of section 65.023 of the civil practice and remedies code do not apply. *See Continental Airlines*, 988 S.W.2d at 736. Finally, we hold that it was within the court's

48

jurisdiction to issue an anti-suit injunction as to First Rio's suits in Cameron County and prospective suits filed before exhausting administrative remedies. Because the anti-suit injunction pertained to vexatious litigation, not "vexatious litigants," First Rio's challenge to a finding that it and Dr. Howell are "vexatious litigants" is not before us for review.

Concerning exhaustion of administrative remedies, because the statutory scheme demonstrates that the legislature has granted to the Commission the sole authority to make an initial determination of a medical fee or medical necessity dispute, we hold that the Commission has exclusive jurisdiction over these disputes. *See Subaru*, 84 S.W.3d at 221. Thus, First Rio is required to exhaust administrative remedies before seeking court review of these disputes.

As to First Rio's request for a jury trial, the record demonstrates that the "granting of a jury trial would operate to injure the adverse party, disrupt the court's docket, or impede the ordinary handling of the court's business," *Halsell*, 810 S.W.2d at 371, and that only issues of law were before the court. Therefore, we cannot say that the district court abused its discretion in denying First Rio's demand for a jury trial. We further find that First Rio has waived its argument as to the propriety of the judgment against Dr. Howell individually.

Concerning the district court's issuance of declaratory relief, because the controversy between the parties can be resolved by the declarations sought, *Beadle*, 907 S.W.2d at 467, we hold that the district court did not issue an impermissible advisory opinion in granting the declaratory relief. Further, given the precedent for the State and counties to assert declaratory actions and that the UDJA is to be "liberally construed and administered," Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b), we hold that the Commission had standing to assert its counterclaims for declaratory

49

relief. Because the declaratory relief does not parrot the injunctive relief and seeks more than a declaration concerning the validity of a rule, Texas Mutual, Continental Casualty, and the Commission were entitled to seek attorney's fees under the UDJA. We cannot say that the district court abused its discretion in awarding fees to these appellees pursuant to their requests for declaratory relief.

As to First Rio's challenges on constitutional grounds, we do not find that the district court's issuance of a permanent injunction against First Rio's "assigns" impairs appellants' right to contract. The constitutional provision applies to "laws," which do not include decisions of a court. We do not find that the IRO fee is an unreasonable or arbitrary restriction when balanced against the purpose and basis of the statute, *Rose*, 801 S.W.2d at 843, and thus hold that the fee provisions do not violate the open courts provision of the Texas Constitution. Having determined that the Commission has exclusive jurisdiction over medical fee and medical necessity disputes, we find that this requirement is not unconstitutional as to disputes under $200. Finally, we do not find any violation of First Rio's due process rights in the form of a variance between the district court's oral and written rulings.

Concerning the law firm's appeal, because we find that some evidence supports the imposition of sanctions on five of the seven grounds asserted in Texas Mutual's motion for sanctions, we cannot say that the district court abused its discretion in imposing these sanctions on the law firm. However, having affirmed the sanctions upon Texas Mutual's motion only in part, we remand the issue for recalculation of attorney's fees sanctions in accordance with this opinion. As to the $3,200 award, although the district court did not afford the law firm an opportunity for notice

50

and hearing before imposing those sanctions, the law firm failed to preserve error by not affording the district court an opportunity to correct its mistake.

Because only the Commission and the State Office of Risk Management sought permanent injunctive relief, and pursuant to Continental Casualty's request, we reform the judgment to delete the reference to Continental Casualty as one of the parties seeking a permanent injunction. We affirm the judgment of the district court in all other respects.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Reversed and Remanded in Part; Reformed and, as Reformed, Affirmed in Part

Filed:   August 12, 2004

51