ACCEPTED
15-24-00066-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/29/2025 5:48 PM
CHRISTOPHER A. PRINE
CLERK

**NO. 15-24-00066-CV**

IN THE COURT OF APPEALS
FOR THE FIFTEENTH JUDICIAL DISTRICT
AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/29/2025 5:48:04 PM
CHRISTOPHER A. PRINE
Clerk

**RICHARD MARK DUDLEY AND DEANIE PALMER DUDLEY v. TEXAS MUNICIPAL POWER AGENCY**

ON APPEAL FROM THE
272ND  DISTRICT COURT
BRAZOS COUNTY, TEXAS
CAUSE NO. 18-001737-CV-272

**APPELLANTS RICHARD MARK DUDLEY AND DEANIE PALMER DUDLEY'S REPLY BRIEF**

THE SWEARINGEN LAW FIRM
ROBERT A. SWEARINGEN, P.C.

Robert A. Swearingen
State Bar Number 19563050
3002 Texas Avenue South
College Station, Texas 77845-5048
(979) 680-9993 ~ Telephone
(979) 680-9991 ~ Facsimile
robert@swearingenlaw.com

ATTORNEY FOR APPELLANTS
RICHARD MARK DUDLEY AND
DEANIE PALMER DUDLEY

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**TABLE OF CONTENTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**INDEX OF AUTHORITIES**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**ARGUMENT**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.  The declaratory relief in the Final Judgment improperly expanded and rewrote the Easement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.  TMPA did not address Dudley's arguments regarding the permanent injunction and instead incorrectly relied on Texas Civil Practice & Remedies Code §37.011, which is not contained in TMPA's pleadings or the motion for summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.  TMPA appears to agree to the standards that are applicable to the review of an award of attorney's fees under Texas Civil Practice & Remedies Code §37.009.  12

IV.  TMPA appears to agree with the Dudleys about how the trial court calculated attorney fees.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

V.  The award of attorney's fees should be reversed. . . . . . . . . . . . . . . . . . . . . . . 13

VI.  TMPA did not dispute that the trial court had to follow the lodestar method. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VII.  TMPA did not explicitly address the argument that the trial court abused its discretion in concluding that, considering all of the circumstances of this case, an award of attorney's fees in the amount of $223,556.25 to TMPA would be equitable and just.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

VIII.  TMPA does not assert or dispute Dudleys' arguments regarding Findings of Fact 10 - 12 as merely evidentiary and not controlling issues that cannot form the basis for TMPA's attorney fee award... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IX.  Alternatively, the trial court erred by refusing to make requested additional findings of fact and conclusions of law.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

X.  TMPA does not dispute the underlying facts that the attorney fee award in the Final Judgment is void because it does not conform to TMPA's pleadings . . . . . 24

XI.  TMPA's position regarding remand on attorney's fees is without support. . 25

**PRAYER**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**CERTIFICATE OF COMPLIANCE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**CERTIFICATE OF SERVICE**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# INDEX OF AUTHORITIES

## **Cases**

*Constanzo v. Texas Advantage Community Bank, N.A.*, No. 09-21-00345-CV, 2022 WL 4546571 (Tex. App.–Beaumont September 29, 2022, no pet.). . . . . . . . . . . . . 8

*El Apple I, Ltd. v. Olivas,* 370 S.W.3d 757 (Tex. 2012). . . . . . . . . . . . . . . . . . . . 20

*Giles v. Cardenas,* 697 S.W.2d 422
(Tex. App.–San Antonio 1985, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . 20

*Herrera v. Sunbelt Rentals, Inc.*, No. 01-22-00793-CV, 2024 WL 1513879 at *3 (Tex. App.–Houston [1st Dist.] April 9, 2024, pet. denied). . . . . . . . . . . . . . . . . . . . . . . 8

*Howell v. Texas Workers' Compensation Com'n*, 143 S.W.3d 416
(Tex. App.–Austin 2004, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469
(Tex. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16, 17, 18, 19

*Shelton v. Kalbow*, 489 S.W.3d 32
(Tex. App.–Houston [14th Dist.] 2016, pet. denied). . . . . . . . . . . . . . . . . . . 9

*Steeltec Constructors, L.L.C. v. Fish and Ski Marine, GP-LLC*, No. 02-21-00285-CV, 2022 WL 1682409 (Tex. App.–Fort Worth May 26, 2022, no pet.). . . . . . . . . . 8, 9

*Texas Educ. Agency v. Leeper*, 893 S.W.2d 432 (Tex. 1994). . . . . . . . . . . . . . . 10

*Toledo v. KBMT Operating Company, LLC*, 581 S.W.3d 324
(Tex. App.–Beaumont 2019, pet. denied). . . . . . . . . . . . . . . . . . . . . . . 19, 21

*Triton Consulting, Inc. v. VanDyk*, No. 01-22-00183-CV, 2024 WL 4455589
(Tex. App.–Houston [1st Dist.] October 10, 2024, no pet. hist.). . . . . . . . . . 9

## ARGUMENT

## I.  The declaratory relief in the Final Judgment improperly expanded and rewrote the Easement

### A.      The trial court's declaration resulted in a removal of restrictions on TMPA's discretion

One of Dudley's complaints on appeal about the declaratory judgment relief is that it did not include and therefore "wrote-out" the restriction on TMPA's rights that is expressly contained in the Easement.  Specifically, the trial court transformed:

> "...the right to trim and cut down trees and shrubbery to the extent, in the sole judgment of [TMPA] <u>necessary to prevent possible interference with the operation of any of said lines or to remove possible hazards thereto</u>..."

into this:

> "The Easement vested TMPA with the right of ingress and egress over, across, and upon the Easement area for the purposes, among others, of (i) trimming and cutting down trees and shrubbery within or extending into the Easement Area..."

The above-underlined restriction on TMPA's authority is missing from the declaratory relief ordered by the Court. The trial court's unusual declaratory relief appears to operate as some sort of rewrite of the Easement itself, such that in the future TMPA will be able to rely on this judgment – which does not contain the Easement's restriction on TMPA's discretion –  to assert that it has the right to trim and cut down trees and shrubbery without any possible challenge or consequence.

5

## B. *TMPA's wall vs. fence argument is a pedantic red herring that ignores the actual rights granted to the Dudleys*

In Appellee's Brief, TMPA did not dispute that the Easement gives the Dudleys the right to erect fences on the Easement Property not more than 8 feet high provided that they have gates, openings, or removable sections at least 10 feet wide which would permit TMPA reasonable access to all parts of said land. TMPA did not dispute that the "retaining wall" is not more than 8 feet high. TMPA did not dispute that the "retaining wall" has gates, openings, or removable sections at least 10 feet wide which would permit TMPA reasonable access to all parts of said land. TMPA made no factual showing, at trial or in its brief, that the "retaining wall" has inhibited TMPA's <u>reasonable</u> access to all parts of the Easement Area.

TMPA instead dove deep into a dictionary to argue that the "retaining wall" is a "wall" and not a "fence" because the purpose of the "retaining wall" was to hold back dirt, and, since the Easement permits "fences" and does not mention "walls," the "retaining wall" is not permitted. But whether the retaining wall was for the creation of a boundary (like the decorative boundary of a yard from a driveway area) or to hold back dirt does not matter. A fence can hold in livestock as well as mark a boundary; there is no difference between such a fence and a masonry fence holding back dirt. The Easement itself does not refer to nor is it limited by "boundary" fences

6

or a certain type of fencing material.

The "retaining wall" looks like a fence and acts like a fence — it's a fence. It is a structure that is not more than 8 feet tall that does not impede TMPA's access. TMPA's focus on the dictionary and the Dudleys' description of the thing as a "retaining wall" does not transform that thing into something outside of the scope of the Easement. TMPA provided no evidentiary or contractual basis for why the "retaining wall" should be treated differently from any other type of fence.

       C.     *TMPA provided no justification for the declaratory judgment giving TMPA the power in its sole discretion to declare the retaining wall an obstruction.*

Declaration No. 4 impermissibly transforms and rewrites the Easement by giving TMPA the right to make a determination in its "sole judgment" about whether the retaining wall "interferes with the exercise of its rights in and to the Easement." The Easement as-written, however, does not give TMPA the power to make a determination in its "sole judgment" about whether any given fence meets the requirements of the Easement or to make a determination in its "sole judgment" whether or not something is an obstruction. TMPA's only rights under the Easement that are subject to its "sole judgment" relate to its authority to trim and cut down trees and shrubbery to the extent necessary to prevent possible interference with the operation of any said lines or to remove possible hazards to those lines. CR 663.

7

TMPA provided absolutely no justification or authority for the trial court's radical expansion of TMPA's authority.

**II.    TMPA did not address Dudley's arguments regarding the permanent injunction and instead incorrectly relied on Texas Civil Practice & Remedies Code §37.011, which is not contained in TMPA's pleadings or the motion for summary judgment.**

    *A.     TMPA failed to previously assert this statute as basis for injunctive relief.*

TMPA did not mention Texas Civil Practice & Remedies Code §37.011 in its petition. CR 160-167. This statute should be plead if it is intended to serve as a basis for injunctive relief. See *Herrera v. Sunbelt Rentals, Inc.*, No. 01-22-00793-CV, 2024 WL 1513879 at *3 (Tex. App.–Houston [1st Dist.] April 9, 2024, pet. denied).

TMPA did not mention Texas Civil Practice & Remedies Code §37.011 in its motion for summary judgment. CR 188-607. The trial court's Final Judgment and summary judgment order also did not mention Texas Civil Practice & Remedies Code §37.011. This Court should reject TMPA's argument as "a  motion for summary judgment must expressly present the grounds upon which it is made and must stand or fall on these grounds alone." *Constanzo v. Texas Advantage Community Bank, N.A.*, No. 09-21-00345-CV, 2022 WL 4546571 at *4 (Tex. App.–Beaumont September 29, 2022, no pet.); See also *Steeltec Constructors, L.L.C. v. Fish and Ski Marine, GP-LLC*, No. 02-21-00285-CV, 2022 WL 1682409 at *4 (Tex. App.–Fort

Worth May 26, 2022, no pet.)("Appellees' summary-judgment motion failed to give

Steeltec "notice of all matters expected to be asserted in arguing the motion.").

Grounds asserted for the first time in an appellee's brief should be rejected. See

*Triton Consulting, Inc. v. VanDyk*, No. 01-22-00183-CV, 2024 WL 4455589 at *13

(Tex. App.–Houston [1st Dist.] October 10, 2024, no pet. hist.)("a summary judgment

cannot be affirmed on grounds never presented to the trial court by the motion").

> B.    *TMPA is incorrect regarding injunctive requirements under Texas Civil Practice & Remedies Code §37.011.*

Alternatively, if this Court entertains TMPA's argument for using §37.011 as

a basis for injunctive relief, the Court should discard TMPA's argument that proof of

a wrongful act, imminent harm, an irreparable injury, and an absence of an adequate

remedy at law are not required with respect to injunctions imposed on that basis. See

Appellee's Brief P. 29. First, TMPA included such requirements in its pleadings. CR

166 (" Defendants' actions gave rise to a risk of imminent, irreparable injury for

which there is no adequate remedy at law"). Second, courts of appeal have held that

proof of the occurrence of a wrongful act giving rise to imminent and irreparable

harm for which there is no adequate remedy at law is required for injunctive relief

under Texas Civil Practice & Remedies Code §37.011. See *Shelton v. Kalbow*, 489

S.W.3d 32, 48 (Tex. App.–Houston [14th Dist.] 2016, pet. denied). The *Mireskandari*

case, cited by TMPA in its brief, does not state that such proof is not required. That case was an interlocutory appeal for the evaluation of a TCPA claim, not a review of the evidentiary sufficiency for a granted injunction. In analyzing the TCPA claim in that case, that court of appeals declined to analyze whether clear and convincing evidence had been established for each of the requirements for injunctive relief, and, for the purposes of the Anti-SLAAP statute, instead looked to the claim for which the injunctive relief was ancillary.

Admittedly, some courts have permitted an alternative standard for permanent injunctions under Texas Civil Practice & Remedies Code §37.011 (but not the sort of ill-defined, free-wheeling standard proposed in Appellee's Brief). They have held that ancillary injunctive relief may be obtained when the evidence shows that the defendant will not comply with the judgment. See e.g. *Howell v. Texas Workers' Compensation Com'n*, 143 S.W.3d 416, 433 (Tex. App.–Austin 2004, pet. denied). This alternative standard is incorrect and this Court should decline to follow those cases. Those cases cite to *Texas Educ. Agency v. Leeper*, in which the Texas Supreme Court reversed a permanent injunction, stating in three sentences that:

> "There is no indication, however, that defendants will attempt to contravene the district court's judgment, or ours. On the contrary, we are confident that defendants will abide by our decision in carrying out their duties. Accordingly, we conclude that issuance of a permanent injunction was unnecessary and should be reversed." 893 S.W.2d 432, 446 (Tex. 1994).

10

Some courts of appeals have expanded on that language, holding that ancillary injunctive relief may be obtained when the evidence shows that the defendant will not comply with the judgment. See e.g. *Howell v. Texas Workers' Compensation Com'n*, 143 S.W.3d at 433. The Dudleys contend that this is not an independent standard but was language intended by the Texas Supreme Court to quickly dispose of an issue on a simple evidentiary point (i.e. that there was no evidence of an imminent harm). This Court should accordingly reject this alternative standard.

If, however, this Court disagrees with the Dudleys' contention and permits this alternate standard of proof, the injunctive relief should still be reversed. There is no evidence that the Dudleys would not comply with the judgment for declaratory relief. TMPA presented no such evidence in its motion for summary judgment. CR 188-607. The evidence actually showed the opposite; the Dudleys removed the complained-of items from the Easement Area at the Dudleys' expense. CR 141-142; 5 RR 4:12-14.

### C. TMPA did not address most of the Dudleys' arguments

TMPA did not address the Dudleys' arguments that the injunctions must be reversed because they do not satisfy the requirements of Texas Rule of Civil Procedure 683. TMPA also did not attempt to satisfy the requirements of showing that it would suffer an irreparable injury or lacked an adequate remedy at law. TMPA

11

does not dispute any of the Dudleys' legal contentions that injunctive relief cannot be vague, unclear, or overly broad. TMPA provided no citations or other authority to support its claim that the injunctive relief at issue in this case was not vague, unclear, or overly broad.

**III. TMPA appears to agree to the standards that are applicable to the review of an award of attorney's fees under Texas Civil Practice & Remedies Code §37.009.**

TMPA did not appear to contest and apparently agrees with the standards articulated by the Dudleys that are applicable to the review of an award of attorney's fees under Texas Civil Practice & Remedies Code §37.009.

**IV. TMPA appears to agree with the Dudleys about how the trial court calculated attorney fees.**

TMPA appears to agree with the Dudleys about how the trial court calculated attorneys fees. TMPA did not contest any of the factual assertions made by the Dudleys as to how the base lodestar fee award was calculated. TMPA agreed that the trial court did not make an adjustment of the base lodestar.

**V. The award of attorney's fees should be reversed.**

In its brief, TMPA acknowledges that sufficient evidence for a base lodestar figure must include, at a minimum, evidence of the reasonable amount of time required to perform the services and the reasonable hourly rate for each person performing such services. Appellee's Brief Pages 35-36. TMPA did not, however, show that it presented sufficient evidence of those things.

*A. Reasonable Hourly Rates*

In Appellee's Brief, TMPA paid lip service to the *Rohrmoos* opinion, but then proceeded to basically ignore the holding of that case. TMPA instead advocated for approval of its hourly rate based upon some asserted evidence of some *Arthur Andersen* factors. TMPA's argument is flawed.

Fee-shifting awards for attorney's fees are to be based on market rates for the services rendered. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 499 (Tex. 2019) (citing to *Missouri v. Jenkins*, 491 U.S. 274, 283, 109 S.Ct. 2463, 105 L.Ed. 2d 229 (1989). Determining a market rate for the services of a lawyer is inherently difficult, as rates are based on supply and demand in a particular community, as well as on a lawyer's experience, skill, and reputation; however, a rate shown to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" is "normally

13

deemed to be reasonable." *Rohrmoos Venture*, 578 S.W.3d at 499 (citing to *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541.). This analysis accounts for most of the relevant *Arthur Andersen* considerations. *Rohrmoos Venture*, 578 S.W.3d at 500. For example, the special skill and experience of counsel and the quality of the representation are considerations that are already reflected in the hourly rate. See *Rohrmoos Venture*, 578 S.W.3d at 492. The "results obtained" and the "novelty and complexity of issues" are subsumed in the calculation of the amount of hours worked. *Id.* at 492-93. They are not independent bases on which an hourly rate may be deemed reasonable. See *Id.*

          1.     No evidence that hourly rates were in line with those prevailing in the community

TMPA provided no evidence, and cited to no evidence in its brief, about the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.[1] TMPA provided no evidence, and cited to no evidence in its brief, that the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service

---

[1] In Appellants' Brief, the Dudleys cited to 13 RR 61-62 for how Mr. Junkin's testimony failed to meet the relevant evidentiary threshold for testimony about a local legal market. TMPA only cited to that exact same section of the record to support their argument that he did provide such evidence. TMPA cited to no other evidence. As more fully articulated in Appellants' Brief, that testimony was not sufficient to justify the reasonableness of the rates sought to be imposed on the Dudleys. Appellants' Brief is also a much more accurate summary of such testimony.

properly had any kind of influence on the hourly rate charged in this case for the services rendered.[2]  TMPA did not produce any evidence for how these considerations should be evaluated in the context of the Brazos County legal market. TMPA did not produce any evidence that such high rates were necessary because of the subject matter of this case.  TMPA did not present any caselaw or other authority that would show that those factors support TMPA's fee rate.  TMPA did not produce any evidence about the makeup of the market for legal services in the Brazos County community.  TMPA's expert did not know of any firms in Brazos County that charge $500 per hour.  13 RR 71:19-21.  TMPA utterly failed to meet its standard of proof. Fundamentally, TMPA presented legally and factually insufficient evidence of what similar services by lawyers of reasonably comparable skill, experience, and reputation charge in the legal community of Brazos County.

2. No evidence to establish reasonableness of associate attorney's fees.

TMPA did not cite to any evidence or otherwise offer any argument that would substantiate the reasonableness of any of the other attorneys who provided work on

---

[2]One could imagine that attorneys in cases about patents, tax law matters, extremely complicated and specialized complex commercial litigation, toxic torts, civil rights litigation, or other sorts of specialized, difficult matters that only a relatively small percentage of the Bar is qualified to handle could present evidence about the small market and relative rarity of such attorneys to support testimony about how that influences the market rate for *the services rendered* in those cases.  No testimony or evidence like that was presented in this case.

this case. TMPA did not argue that these associates had some sort of rare skill set or training that would justify their rates. TMPA did not argue that their rates were in line with the legal market of Brazos County. TMPA did not provide any justification for the hourly rates of $450 for Ms. Nommensen's work or $325 for Mr. Krueger's work.

3. No response to the Dudleys' arguments that Mr. Junkin's opinions were conclusory and legally insufficient.

TMPA did not address or otherwise provide any legal argument to counter the Dudleys' assertions that Mr. Junkin's opinions about the reasonableness of the fees requested, hourly rates, and amount of hours worked were conclusory and legally insufficient to support the trial court's finding of the reasonableness of the fee award.

4. TMPA implicitly urges this Court to ignore the *Rohrmoos* holdings

In its brief, TMPA implicitly urges this Court to adopt a sort of free-floating analysis-of-considerations that has been long-abandoned by the United States Supreme Court and the Texas Supreme Court. *Rohrmoos Venture* at 491. Such an analysis was rejected because it gave very little actual guidance to district courts; setting attorney's fees by reference to a series of sometimes subjective factors placed unlimited discretion in trial judges and produced disparate results. *Rohrmoos Venture* at 491. Accordingly, this Court should reject TMPA's arguments that some evidence

16

established some *Arthur Anderson* considerations. Such arguments are not relevant because they do not address how the claimed rate is in line with those rates prevailing in the community. See *Rohrmoos Venture* at 499.

For example, the nature and length of the professional relationship between TMPA and Mr. Junkin has nothing to do with the reasonableness of the fee to be shifted to the Dudleys. Mr. Junkin provided no testimony about his experience in litigating easements of this nature, no testimony about whether TMPA engages any other attorneys, or how Mr. Junkin's knowledge of TMPA created some sort of economic incentive or other efficiency that otherwise would justify his fees as being out-of-sync with Brazos County.

On the issue of the relief sought, TMPA failed to show how it has anything to do with the reasonableness of an hourly rate sought by TMPA. TMPA's claims about its concerns for human health and safety and its ability to operate and repair its lines are also not factually true. The items complained of had been in place for a long time, and the cutting techniques pushed for by TMPA exceeded limits that had been in place for decades. See Appellants' Brief P. 15-17. TMPA got a new servicer who pushed these new techniques; this was a test case for TMPA's benefit. *Id.* If there had actually been any concern about threats to human health, why did TMPA wait years to file this suit? And if there were any concerns about human health, they were

17

all addressed, voluntarily and pursuant to an agreement by the Dudleys, to move all the complained-of items after the temporary injunction hearing at the Dudleys' expense. The massive amounts of hours spent litigating after that was because TMPA insisted upon expanding its easement rights through declaratory judgment actions and seeking attorney's fees – hours that had nothing to do with human health.

Fundamentally, TMPA argues, in effect, that it got everything it wanted from the trial court and it agreed to pay its lawyer these rates, so it should also get all of its claimed attorney's fees, too. TMPA did not provide any caselaw or other authority for that proposition either. It is a proposition that was actually rejected by the Texas Supreme Court, who cautioned "It is worth repeating that because fee-shifting awards are to be reasonable and necessary for successfully prosecuting or defending against a claim, reasonableness and necessity are not dependent solely on the contractual fee arrangement between the prevailing party and its attorney." *Rohrmoos Venture*, 578 S.W.3d at 498.

### B. Reasonable Hours Worked

TMPA apparently implicitly urges this Court to ignore the burden of proof that TMPA had in this case and instead shift the burden to the Dudleys. The Dudleys did not have to establish how the hours worked by TMPA's attorneys were not reasonable; TMPA's attorneys had to prove that they were reasonable. The Dudleys

18

pointed out in their brief the shortcomings of TMPA's proof. Mr. Junkin did not offer any non-conclusory testimony to explain the reasonableness of the hours worked. Nor did Mr. Junkin's testimony offer adequate explanations about why the layers of work reflected by the different lawyers working on the case were reasonable. See *Toledo v. KBMT Operating Company, LLC*, 581 S.W.3d 324, 331 (Tex. App.–Beaumont 2019, pet. denied). Mr. Junkin's rather conclusory testimony did not address why the attorneys working on this case were not needlessly duplicating and revising each other's work. See *Id*. Dudleys' citations to authority and to the absence of the necessary evidence in the record for the substantiation of the fees sought by TMPA show that the evidence is legally and factually insufficient to support the trial court's award of attorney's fees. Despite having four extensions to file its brief, TMPA did not cite to a single case for support in justifying the hours worked or for any other argument TMPA makes about how this Court should assess the reasonableness of the amount of hours TMPA claims was worked by its lawyers.

It is not nit-picking to point out how TMPA's attorney's testimony failed to show that a good-faith effort was made to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. 13 RR 80:18-20, 81:7-12, 83:2-84:9, 85:3-4, 87:6-11, 92:1-4, 94:9-13, 100:16-20, 101:20-25, 102:9-13, 103:10-12; See *Rohrmoos Venture,* 578 S.W.3d at 499, quoting *Hensley v. Eckerhart*, 461 U.S.

424, 434 (1983); *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762 (Tex. 2012). The trial court or the appellate court, as the case may be, has the duty to reduce the amount of attorney's fees when excessive. *Giles v. Cardenas*, 697 S.W.2d 422, 429 (Tex. App.–San Antonio 1985, writ ref'd n.r.e.). TMPA provided no cases and did not cite to any evidence that would indicate that its attorneys did not overprepare this case. See *Giles v. Cardenas*, 697 S.W.2d at 430 ("if their attorneys spent 92.7 hours in preparing the case [about removing a fence because of deed restrictions] for trial, then they overprepared the case, and appellants should not be held liable for attorney's fees due to overpreparing.")

TMPA's justifications in its brief for the hours worked are not credible, as they were not in evidence and repeatedly do not address the actual issues brought up by the Dudleys. TMPA ignored, for example, the Dudleys' argument that the evidence does not support or justify the excessive, repetitive billing by multiple attorneys for one project.

At one point in its brief, TMPA makes the meritless statement to justify the amount of attorney's fees spent preparing for a trial about attorney's fees that "Once the trial was completed, the Dudleys submitted a 47-page filing challenging......" and "The Dudleys submitted several additional post-trial filings relating to the form of Final Judgment..." Appellee's Brief. P. 53. None of those things were included in

20

the material complained about by Dudley; Dudley's complaints about the preparation fees predate the filings referenced by TMPA. In fact, Dudley's complaints about TMPA's trial preparation fees **are contained in the 47-page brief referenced by TMPA.** CR 1203-1250. TMPA's suggestion in its brief that the Dudleys incurred the fees by filing that brief or other post-trial material is not supported by the facts.

Under Texas law, a reasonable attorney's fee calculation results in an award that is "not excessive or extreme, but rather moderate or fair." *Toledo v. KBMI Operating Company, LLC*, 581 S.W.3d at 333. The Dudleys identified the many items in TMPA's invoices that reflected duplicative, excessive, and inadequately documented work. See CR 1203-1250;13 RR 70:16-117:19, 130:17-134:7. Yet the trial court, like the trial court in *Toledo*, failed to reduce or eliminate any of them in its award. Accordingly, the trial court failed to apply the lodestar method properly and apply the guiding rules and principles established by the Texas Supreme Court to determine the reasonableness of the amount awarded to TMPA. The evidence is legally and factually insufficient to support the trial court's award. See *Id.* ("on this record, it was neither reasonable, nor just, to require Toledo to pay the entire amount of fees that are at issue").

**VI. TMPA did not dispute that the trial court had to follow the lodestar method.**

TMPA did not dispute that the trial court had to follow the lodestar method, not some alternative, separate *Arthur Andersen* test. TMPA provided no authority, support, or argument that some alternative, separate *Arthur Andersen* test would be an acceptable basis for a determination of the reasonableness and necessity of fees.

**VII. TMPA did not explicitly address the argument that the trial court abused its discretion in concluding that, considering all of the circumstances of this case, an award of attorney's fees in the amount of $223,556.25 to TMPA would be equitable and just.**

TMPA did not explicitly address the argument that the trial court abused its discretion in concluding that, considering all of the circumstances of this case, an award of attorney's fees in the amount of $223,556.25 to TMPA would be equitable and just. TMPA did not dispute the facts set forth in that issue by the Dudleys. TMPA apparently agrees that the trial court awarded that fee because the Dudleys did not reach an agreement with TMPA before TMPA filed this lawsuit. As set forth in Appellants' Brief, the trial court erred by failing to consider the entirety of the circumstances or, alternatively, not properly weighing such circumstances.

**VIII. TMPA does not assert or dispute Dudleys' arguments regarding Findings of Fact 10-12 as merely evidentiary and not controlling issues that cannot form the basis for TMPA's attorney fee award.**

Findings of Fact Nos. 10-12 are, frankly, a bit unusual, so the Dudleys addressed them head-on as not being controlling on the issue of an attorney's fee award. In Appellee's Brief, TMPA did not make an argument for attorney's fees based upon these findings. It seems that all parties are content to ignore them.

**IX. Alternatively, the trial court erred by refusing to make requested additional findings of fact and conclusions of law.**

TMPA ignores the Dudleys' statement that this is an "alternative" point. TMPA's strangely aggressive argument ignores the context of this point. It was made in an abundance of caution. The Dudleys thought that the attorney's fees issue was able to be sufficiently presented,[3] but, because of the absence of the additional findings of fact and conclusions of law, and the wide range of possibilities that could be developed to explain how a fee award could have been theoretically arrived at,[4] the

---

[3]Such presentation took the Dudleys' attorneys a lot more work to draft a much longer brief in order to establish the basis of the trial court's fee award than would have been necessary if the trial court had made the additional findings of fact and conclusions law that were opposed by TMPA. Now, on appeal, TMPA did not dispute the same basis for the attorney's fees that was in the Dudleys' proposed additional findings of fact and conclusions law.

[4]For example, a base lodestar at less than what was ultimately awarded, a lodestar adjustment upwards, with an equitable award downwards, could theoretically produce the same result as the award provided by the trial court. There was no evidence that is what the trial court did, but the possibility is theoretically there if this Court wants to entertain it on a technical basis. In that case, the additional findings of fact may be necessary.

23

Dudleys did not want to waive this point if this Court requires more clarity from the trial court. If this Court ultimately determines that it cannot determine the basis of the trial court's award of attorney's fees, the Court should reverse and remand, or alternatively, abate, this case for the trial court to make such additional findings of fact and conclusions of law that provide this Court with the information necessary for a review of the case.

## X. TMPA does not dispute the underlying facts that the attorney fee award in the Final Judgment is void because it does not conform to TMPA's pleadings.

TMPA did not dispute that the Texas Rule of Civil Procedure Rule 47 that was in effect at the time of filing of this case (and the trial of this case) required a plaintiff's pleading to contain a specific statement of the amount of the relief sought. App. 7. TMPA did not dispute that TMPA's active pleading stated that TMPA sought "monetary relief of $100,000 or less and non-monetary relief." CR 160-176. TMPA did not dispute that the monetary relief subject to that rule included damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees. App. 7. TMPA did not dispute that the Dudleys' attorney objected consistently to any request made by TMPA for an award of attorney fees in an amount over $100,000.00. 13 RR 17:23-18:23, 27:15-28:1, 60:1-9. TMPA did not dispute that TMPA did not ask for or receive a trial amendment to its pleadings.

24

## XI. TMPA's position regarding remand on attorney's fees is without support

TMPA argued in its brief that, if this Court reverses the injunctive relief ordered by the trial court, this Court should nevertheless decline to remand this case to the trial court for a reassessment of the attorney fee award. TMPA's position is without merit. In its brief, TMPA argued that its injunctive relief is ancillary to the declaratory relief. TMPA also argued that it is entitled to all of its attorney's fees based, at least in part, upon its success in obtaining all of the declaratory and injunctive relief it sought. TMPA's attorneys fees award included the time spent obtaining the injunctive relief.[5] Based upon the foregoing, TMPA's argument that a reversal of the injunctive relief would not require a reversal of attorney's fees is therefore without sufficient legal or equitable support.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, the Dudleys request that this Court reverse the trial court's judgment, render that the declaratory judgments be vacated, render that permanent injunctions be vacated, and render that TMPA take nothing on its attorney's fees claims. Alternatively, the Dudleys request that this Court reverse and remand for the reasons described above.

---

[5]TMPA emphasizes such time spent in its Appellee's Brief. See Appellee's Brief P. 48-50 (on the temporary injunction).

25

Respectfully submitted,

THE SWEARINGEN LAW FIRM
ROBERT A. SWEARINGEN, P.C.


By:        /s/Robert A. Swearingen
             Robert A. Swearingen
             State Bar Number 19563050
             3002 Texas Avenue South
             College Station, Texas 77845-5048
             (979) 680-9993 ~ Telephone
             (979) 680-9991 ~ Facsimile
             Robert@swearingenlaw.com

             ATTORNEY FOR APPELLANTS
             RICHARD MARK DUDLEY and
             DEANIE PALMER DUDLEY


## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using WordPerfect X3 and contains 5,452 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).


             /s/ Robert A. Swearingen
             ROBERT A. SWEARINGEN

## CERTIFICATE OF SERVICE

I certify that on January 29, 2025, I served a copy of this document on the parties listed below by electronic service and that the electronic transmission was reported as complete. My e-mail address is robert@swearingenlaw.com

Frederick D. Junkin
State Bar No. 11058030
fred.junkin@phelps.com
Phelps Dunbar LLP
910 Louisiana Street, Suite 4300
Houston, Texas 77002
(713) 877-5508
(713) 626-1388 (Fax)
*Attorney for Appellee*
Texas Municipal Power Agency
*via electronic service*


/s/ Robert A. Swearingen
ROBERT A. SWEARINGEN